IN RE the MARRIAGE OF:
Eugenie E. RINTELMAN, Respondent,

v.

Donald C. RINTELMAN, Appellant-Petitioner.

Supreme Court

*No. 83–321.  Argued April 25, 1984.—Decided May 30, 1984.*

(Also reported in 348 N.W.2d 498.)

588

For the appellant-petitioner there were briefs by *Douglas L. Reed,* Milwaukee, and oral argument by *Mr. Reed.*

For the respondent there was a brief by *Lowell K. Levy, Paul M. Dimick* and *Levy & Levy,* S.C., Cedarburg, and oral argument by *Lowell K. Levy.*

DAY, J. This is a review of a decision of the court of appeals[1] affirming an order of the circuit court for Ozaukee county, Hon. Walter Swietlik, Circuit Judge, denying Donald Rintelman's (Petitioner) application for termination of maintenance payments to his former wife Eugenie Rintelman (Respondent). The question is: Does either sec. 767.32(3), Stats.[2] or public policy vitiate a provision in a divorce judgment incorporating a stipulation that provides for maintenance payments "for the lifetime" of the payee when it was understood by the parties that payment would continue even if the payee were to remarry?

We conclude that the lifetime maintenance provision in this case is not in violation of the statute or public policy and that because the Petitioner agreed to lifetime support payments and that agreement was incorporated as part of the divorce judgment, he is now estopped from requesting termination of that obligation.

On August 17, 1978, the Petitioner and Respondent commenced a divorce action in the circuit court for Ozaukee county as joint petitioners. On May 7, 1979,

[1] *In re Marriage of Rintelman v. Rintelman,* 115 Wis. 2d 206, 339 N.W.2d 612 (Ct. App. 1983).

[2] That section states:

"767.32. **Revision of Judgment** . . . (3) After a final judgment requiring maintenance payments has been rendered and the payee has remarried, the court shall, on application of the payer with notice to the payee and upon proof of remarriage, vacate the order requiring such payments."

the parties executed a final stipulation regarding property division and maintenance payments. The stipulation contained a provision for maintenance which stated:

"The joint petitioner husband shall pay the sum of Six Hundred Twenty-five ($625.00) Dollars per month to the joint petitioner wife as and for maintenance payments which shall commence June 1, 1979 and shall be payable on the 1st of each month thereafter until June 1, 1982. On June 1, 1982 said payments shall be reduced to Five Hundred ($500.00) Dollars per month and shall be payable to the joint petitioner wife for her lifetime."[3]

The stipulation was signed by both parties and by counsel for Respondent Eugenie Rintelman.

Also on May 7, 1979, a hearing was held before the Honorable Walter Swietlik on the parties' petition for divorce. The Respondent Eugenie Rintelman was represented by an attorney at that hearing. The Petitioner, Donald Rintelman, appeared *pro se*. Both parties were questioned as to their understanding of the terms of the final stipulation. The transcript from the hearing shows that the trial court judge specifically questioned the Petitioner on his understanding of whether the maintenance payments would continue if the Respondent were to remarry.

"THE COURT: Paragraph one further provides that these payments shall be made to the joint petitioner, Mrs. Rintelman for her lifetime. Is it your understanding that these payments will continue irregardless of her remarriage?

"MR. RINTELMAN: Yes, I understand that."

---

[3] The stipulation also contained an escalator provision which provided that the amount of the maintenance payments would be increased annually according to the formula utilized in the labor contract between the Wisconsin Telephone Company and the Communication Workers of America for the years 1977, 1978 and 1979. The interpretation or use of this escalator provision is not at issue in this review.

On July 26, 1979, the trial court issued its judgment dissolving the marriage. The judgment stated that "[t]he provisions of the Final Stipulation . . . are made a part hereof and incorporated herein by reference as if fully set forth at length herein."

On August 20, 1980, the Respondent remarried. On May 27, 1982 the Petitioner filed an application for termination of maintenance payments upon remarriage with the Ozaukee county circuit court. On August 16, 1982, the Respondent obtained an order to show cause why the Petitioner should not be held in contempt for nonpayment of court ordered maintenance.

On September 3, 1982, a hearing on both the order to show cause and the application for termination of maintenance payments was held before Judge Swietlik. At that hearing the trial court requested the parties to submit written briefs on the issue. On January 13, 1983, the court issued its memorandum decision denying the application for termination of maintenance. The Petitioner appealed to the court of appeals which affirmed the order of the trial court. This court granted Petitioner's petition for review.

This court has not previously addressed the specific question raised by this case. In support of his contention that he is entitled to have his support obligation terminated, the Petitioner relies primarily on the language of sec. 767.32(3), Stats. 1979–80. The Petitioner argues that the use of the word "shall" in that statute evidences the legislature's intention that termination of maintenance be mandatory upon remarriage of the payee. The Petitioner notes that sec. 767.32(3), contains no provision for agreements for maintenance to continue after remarriage and argues that such agreements should not be given effect. The Petitioner further argues that he neither waived his right to request termination of his maintenance obligation nor is estopped from doing so.

Finally the Petitioner argues that to give effect to the stipulation providing for lifetime maintenance violates public policy against maintenance payments following remarriage.

The statute the Petitioner relies upon does not provide for automatic termination of court ordered maintenance payments upon remarriage of the payee. The statute provides rather that the court shall vacate the order of maintenance after the remarriage of the payee and *upon application of the payer*. If the payer spouse does not request termination the obligation continues. It is evident therefore that the statute does not express an absolute public policy against continuation of court ordered maintenance obligations after remarriage. Such obligations can continue to exist if the payer so chooses. The statute clearly contemplates that a payer spouse can decide *after* the payee spouse remarries that the support obligation shall continue by not requesting discontinuance. In this case, the Petitioner agreed prior to the time the Respondent remarried that the maintenance payments would continue during the Respondent's lifetime regardless of her remarriage. The question is whether by virtue of his prior agreement the Petitioner is foreclosed from requesting termination now.

This court has analyzed the rights that arise upon the incorporation of a stipulation into a divorce judgment on a number of occasions. The leading case on the subject is *Miner v. Miner*, 10 Wis. 2d 438, 103 N.W.2d 4 (1960). In that case, this court distinguished between the situation in which the trial court merely refers to and approves the parties' contractual settlement of their financial obligations and the situation in which the trial court adopts the parties' agreement and recommendation and makes it a part of its judgment. In the former situation, where the court simply approves the parties' for-

mal out-of-court agreement, "[t]he arrangement is contractual, not a judicial determination, and therefore no more subject to change by the court than the terms of any other private agreement." 10 Wis. 2d at 444. In the latter situation, where the court adopts the parties' stipulation and incorporates it into its judgment, "[t]he award [is] . . . by adjudication and subject to modification." 10 Wis. 2d at 444.

The rule stated in *Miner* has been reiterated in subsequent cases. In *Vaccaro v. Vaccaro,* 67 Wis. 2d 477, 227 N.W.2d 62 (1975), this court stated the rule as follows:

"[T]he proper view is that contractual obligations arise only in situations where the court expressly refers to and approves a formal agreement between the parties, and not where . . . the court merely adopts and to some extent modifies the parties' joint recommendations as to alimony, support or property settlement." 67 Wis. 2d at 486.

*See also, Schmitz v. Schmitz,* 70 Wis. 2d 882, 236 N.W.2d 657 (1975).

In the present case, the trial court examined the terms of the parties' proposed settlement as expressed in the final stipulation and adopted them as its judgment. The judgment stated that "[t]he provisions of the Final Stipulation are made a part hereof and incorporated herein by reference as if fully set forth at length herein." Thus, this case falls under the category of an adjudicated award rather than a contract and the Respondent has no contractual claim to the continuation of maintenance payments.

The fact that the Respondent does not have a contractual right to the receipt of maintenance beyond her remarriage does not mean she is without legal grounds

to insist upon enforcement of the terms of the stipulation. In other similar situations this court has held that when a party to a divorce agrees to a certain disposition of the parties' financial obligations and the agreement is made a part of the judgment of the court, the party is thereafter estopped from seeking release from the terms of the agreement. In *Bliwas v. Bliwas,* 47 Wis. 2d 635, 178 N.W.2d 35 (1970), the trial court adopted as a part of its amended order to an earlier divorce decree the parties' stipulation that the father would continue to contribute to the costs of his son's education after the child had reached the age of majority. As a part of the same order the father was granted a reduction in the child support payments while the child was still in school and a minor. The mother of the child sought to enforce the court order in a contempt proceeding. The father argued that the agreement was enforceable only in a separate proceeding brought by the guardian, or the child upon reaching majority, based on the law of contract. On appeal, this court held that absent an agreement by the parties, the trial court was without jurisdiction to order child support after the child reached the age of majority.[4] However, because the father had agreed to contribute to the support of his adult son and that agreement was incorporated in the court order, the father was thereafter estopped from challenging the authority of the court to enter such an order. The court stated:

"[W]e hold that the enforcement of a family court order, which would not be enforceable without a prior

[4] The applicable statute provided:
"In rendering a judgment of annulment, divorce or legal separation, the court may make such further provisions therein as it deems just and reasonable concerning the care, custody, maintenance and education of the *minor children* of the parties, . . . Sec. 247.24, Stats. (1969) (Emphasis added.)"

stipulation of the parties that it be made part of the decree, rests not so much in the enforcement of a contractual obligation or even extension of jurisdiction of the court, as it does in recognizing that a person who agrees that something be included in a family court order, especially where he receives a benefit for so agreeing, is in a poor position to subsequently object to the court's doing what he requested the court to do." 47 Wis. 2d at 639–640.

The court made it clear that it was resting its holding on the doctrine of estoppel when it stated:

"[T]he appellant father, who stipulated and consented that the family court enter an order for contribution by him for the education of his son beyond the son's twenty-first birthday, is estopped from now challenging the right of the family court to do exactly what he joined his wife in requesting the court to do." 47 Wis. 2d at 641.

This court reiterated the rule stated in *Bliwas v. Bliwas* in *Schmitz v. Schmitz*, 70 Wis. 2d 882, 236 N.W.2d 657 (1975). The question in that case was whether a stipulation which was incorporated into the divorce judgment providing that child support would continue until the child reached twenty-one years of age was enforceable after the legislature reduced the age of majority to eighteen years. The court first noted that in *Bliwas* the elements of equitable estoppel were clearly present; i.e., " 'action . . . on the part of the one against whom the estoppel is asserted . . . which induces reliance thereon by another, either in the form of action or non-action . . . to his detriment. . . .' " 70 Wis. 2d at 888 (quoting, *Hanz Trucking, Inc. v. Harris Brothers Co.*, 29 Wis. 2d 254, 266, 138 N.W.2d 238 (1965)). The court held, however, that the facts in *Bliwas* were distinguishable and that the estoppel doctrine was inapplicable to the case before it. Whereas in *Bliwas* the father agreed to contribute to the support of the child beyond the age

of majority as a bargained alternative to lower support payments while the child was a minor, the stipulation in *Schmitz* was a routine divorce stipulation providing for child support payments until the age of twenty-one which was the age of majority under the statute existing when the stipulation was entered into. Subsequently the legislature lowered the age of majority to eighteen. This Court concluded "that the twenty-one age reference was merely descriptive of the then existing majority status." 70 Wis. 2d at 889. Hence the court held that estoppel did not apply and the support was properly terminated when the child became eighteen years of age.

The Petitioner in the present case argues that the doctrine of estoppel should not be applied against him because there is no evidence that he received any benefit for his agreement to make lifetime support payments. In effect, the Petitioner argues that we should restrict the use of estoppel to situations where the party asserting estoppel can point to a specific *quid pro quo.* We conclude that, at least in cases involving stipulations incident to a divorce decree where the parties stipulated to a comprehensive package for the settlement of their financial obligations, to require that a party show a violation of a specific trade-off is unreasonable and unwarranted. In situations such as this one, all that need be shown to constitute an estoppel is that both parties entered into the stipulation freely and knowingly, that the overall settlement is fair and equitable and not illegal or against public policy, and that one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement.

The Petitioner, the Respondent and the trial court all accepted the terms of the stipulation. It was the under-

standing of all concerned that maintenance payments would continue during the Respondent's lifetime regardless of whether or not she remarried. It is undoubtedly impossible to know at this time whether the Respondent would have agreed to the stipulation had it not contained the provision for lifetime maintenance. Nevertheless, we conclude that her acceptance of the stipulation on the understanding that maintenance payments would continue during her lifetime is sufficient reliance on her part to estop the Petitioner from requesting termination upon her subsequent remarriage.

Furthermore, we find the Petitioner's contention that he received no benefit from his agreement to make lifetime support payments implausible. It is true the record does not specifically show that the Petitioner received something in return for agreeing to lifetime maintenance.[5] However, it is undoubtedly true of many negotiated settlements that it is impossible to identify after the fact precisely what was traded for what. The Petitioner does not contend that he was coerced, misled or otherwise at a bargaining disadvantage in negotiating the stipulation. Under the circumstances it is reasonable to assume that the parties bargained as approximate equals, and that the final result was a product of give and take on both sides. Although the record does not reveal the value of the provision for lifetime maintenance in the give and take of the negotiations, it is unrealistic to assume that it had no value at all.

Finally, Petitioner argues that he should not be deemed to have given up his "right" to seek termination of his

---

[5] Both statute and case law expressly recognize the interrelationship between maintenance awards and division of marital property. Section 767.26(3), Stats; *Bahr v. Bahr*, 107 Wis. 2d 72, 80, 318 N.W.2d 391 (1982); *Dean v. Dean*, 87 Wis. 2d 854, 878, 275 N.W.2d 902 (1979); *Johnson v. Johnson*, 78 Wis. 2d 137, 145, 254 N.W.2d 198 (1977).

maintenance obligation because he was not represented by counsel during the negotiations and was therefore not aware of the rule contained in sec. 767.32(3), Stats. We disagree. Even if we accept as true the Petitioner's assertion that he was misinformed about the existence of the statute, we fail to see how it makes any difference. There is no compulsion in the Petitioner's lack of information. He was free throughout the negotiations to seek a settlement whereby his maintenance obligation would terminate upon the Petitioner's remarriage, and he did not need the statute to do so. Instead he agreed to continue maintenance payments notwithstanding the Respondent's remarriage. That agreement was freely and knowingly negotiated. The trial court examined the entire stipulation and incorporated it into its judgment. Neither party claimed at the time judgment was entered that the trial court abused its discretion in approving the stipulation. Nor does either party make that claim now. The fact that the Petitioner may have been unaware of sec. 767.32(3), when he negotiated the stipulation has no bearing on whether the court's judgment incorporating the stipulation should be given effect.

*By the Court.*—The decision of the court of appeals is affirmed.

STEINMETZ, J. (dissenting). I disagree with the result and reasoning of the majority. I would send the case back to the trial court for a hearing to determine what benefits, if any, the petitioner, ex-husband, received in the divorce as equitable compensation for making a lifetime commitment to his ex-wife for maintenance.

The ex-husband was not represented in the divorce proceedings by an attorney. That certainly was his right. However, even though the trial court asked him on the record whether he knew his commitment for lifetime

maintenance would continue even if his wife remarried, there is nothing in this record showing the ex-husband was advised of any tax consequences of the agreement. Tax consequences are of significant importance in a divorce proceeding.

Neither does this record display that the trial court explained the public policy of this state as expressed in sec. 767.32, Stats., that all divorce judgments are appropriate subjects of review if the payee has remarried after the judgment is entered, but only if the payer requests such review. The former husband's lifetime commitment to maintenance flies in the face of established statutory public policy and he, therefore, would have been better served by either the advice of an attorney or at least a discussion by the trial court on the record of the existence of the statute.

This 1979 divorce judgment is not ancient history incapable of reconstruction to determine what, if any, benefit the ex-husband received for agreeing to lifetime maintenance payments. If the evidence is unobtainable or not worthy of consideration regarding the unrecorded considerations of the settlement agreement, then the ex-husband would fail in his burden of showing the lack of quid pro quo for the commitment he made.

In the past in a divorce proceeding we have had before us a commitment to conditions not required by law. In *Bliwas v. Bliwas*, 47 Wis. 2d 635, 640, 178 N.W.2d 35 (1970), this court gave force to a stipulation by the father in a divorce action to make certain payments for the education of his son beyond the son's twenty-first birthday. However, in that case, the father received a quid pro quo for the commitment which this court identified and relied on in its decision. We stated: "Additionally, he procured the benefit of a reduction in child support payments while the child, prior to reaching his majority, was in school." There the record disclosed the

husband received a benefit for his promise, contrary to the instant case.

The majority strains the law of estoppel to arrive at its result. First, the form of estoppel is not identified; however, I assume it is equitable estoppel. Equitable estoppel and estoppel *in pais* are convertible terms. Black's Law Dictionary, (5th ed. 1979) In *Hanz Trucking, Inc. v. Harris Brothers Co.*, 29 Wis. 2d 254, 266, 138 N.W.2d 238 (1965), we quoted *City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 66, 133 N.W.2d 393 (1965), as follows: " 'An estoppel *in pais* consists of action or nonaction on the part of the one against whom the estoppel is asserted which induces reliance thereon by another, either in the form of action or nonaction, to his detriment.' " The only way estoppel appears to apply in this case is that the majority asserts:

"In situations such as this one, all that need be shown to constitute an estoppel is that both parties entered into the stipulation freely and knowingly, that the overall settlement is fair and equitable and not illegal or against public policy, and that one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement.

" . . . .

"However, it is undoubtedly true of many negotiated settlements that it is impossible to identify after the fact precisely what was traded for what." (*Supra* at pp. 596, 597.)

That is a far cry from the normal give and take and reliance which are identified in estoppel cases. The court will now assume a give and take to make the stipulation binding and therefore not reviewable due to estoppel. I would not extend estoppel to reach this result. We cannot tell from this record whether the overall settlement was fair and equitable.

The majority quotes *Bliwas* as follows:

"[W]e hold that the enforcement of a famliy court order, which would not be enforceable without a prior stipulation of the parties that it be made part of the decree, rests not so much in the enforcement of a contractual obligation or even extension of jurisdiction of the court, as it does in recognizing that a person who agrees that something be included in a family court order, *especially where he receives a benefit for so agreeing,* is in a poor position to subsequently object to the court's doing what he requested the court to do." 47 Wis. 2d at 639–40. (*Supra* at pp. 594, 595.) (Emphasis added.)

Then, the majority ignores the requirement to identify the benefit the husband received, if any, for agreeing to the commitment.

The majority opinion makes no comment on what the consequences of an estoppel would be if the ex-husband became economically incapable of making the lifetime maintenance payments. Would he be able to avoid contempt consequences for the non-ability to pay; would the unpaid amounts accumulate as arrearages and would he be able to have the court alter the amount of the payment to meet his ability to pay? If he is estopped for a theoretical equitable benefit of the bargain in the divorce proceedings, does that change if his ability to pay changes? If the equitable estoppel applies to the give and take of the divorce settlement, can the terms be re-examined for any reason or is it only a condition of remarriage that would not allow for reexamination of the judgment based on the agreement?

I would reverse the court of appeals and remand the case to the trial court for a hearing on the former husband's application for termination of maintenance payments to his former wife. The hearing should include the proof, if any, of the husband's benefits received for making the lifetime commitment where he would bear the burden of showing the lack of benefit to him, since it is his motion seeking relief. Also, the hearing should

determine the issue of his knowing, voluntary agreement and whether it should be re-examined in light of his nonrepresentation at the time, any tax consequences relevant to the agreement and the application of sec. 767.32, Stats., since the trial court failed to advise him of the statutory provisions and how it applied to his agreement.

I am authorized to state that Justice LOUIS J. CECI joins in this dissenting opinion.