STATE of Wisconsin EX REL., Allison COLLINS,
and Phillip Collins, Petitioners,

v.

AMERICAN FAMILY MUTUAL INSURANCE CO.,
Melvin Prill, Betty Prill, and The Honorable Willis J.
Zick, Judge for Waukesha County Circuit Court,
Respondents.

Supreme Court

*No. 89-0055-W. Argued November 28, 1989.—Decided
February 26, 1990.*

(Also reported in 451 N.W.2d 429.)

For the petitioners, a petition for writ of mandamus was filed (in the court of appeals) by *Marjan Kmiec, Christopher McConville* and *Kmiec Law Offices,* Milwaukee and oral argument by *Marjan Kmiec.*

For the respondent, Willis J. Zick, the cause was argued by the *Honorable Willis J. Zick,* Waukesha and *James H. McDermott,* assistant attorney general, with whom on· the response (in the court of appeals) was *Donald J. Hanaway,* attorney general.

DAY, J. This is an action in mandamus brought by Allison and Phillip Collins ("Petitioners") to compel the Honorable Willis J. Zick, Judge for the Circuit Court for Waukesha County, to release Petitioners from a stipulation entered into between Petitioners and American Family Mutual Insurance Company ("American Family") which required that the parties pay a "stipulated penalty," as Judge Zick describes it, to the "general fund" of the court should the parties settle their case before trial. The action was brought in the court of appeals under that court's supervisory powers.[1] The court of appeals certified the action to this court pursuant to sec. (Rule) 809.61, Stats., 1987–88. We accepted

[1]*See* Wisconsin Constitution, Article VIII, Sec. 5; sec. 752.01, Stats., 1987–88; sec. 752.02, Stats., 1987–88.

and grant the Petitioners' writ.[2]

At issue is the calendaring system designed and employed by Judge Zick for cases assigned to his branch. The purpose of Judge Zick's calendaring method, which he refers to as his "stip or stack" system, is to decrease the disruptions and costs the court experiences as a result of the last minute settlement of lawsuits. Judge Zick's system requires the parties to be prepared for trial and settlement at the time of the several pre-trial conferences the system utilizes. If the parties are unable to reach a settlement at the pre-trial state, Judge Zick requires them to choose between a "stipulated" or "stacked" trial date.

A "stipulated" trial date affords the parties a date certain for trial. To obtain the date certain, the parties must execute a written stipulation which states the final settlement offer of each party and their agreement that if a settlement is subsequently achieved, a "stipulated penalty" will be paid by the parties to what Judge Zick describes as the "general fund" of the court. Judge Zick determines the amount of the "stipulated penalty," and the parties are informed of the amount prior to signing the stipulation. Judge Zick states that he sets the "stipulated penalty" at an amount which, in view of the stipulated settlement offers, would make it "prohibitively expensive" for the parties to breach the stipulation by settling their case. If a settlement is subsequently reached, Judge Zick apportions liability for paying the "stipulated penalty" between the parties on the basis of their respective percentages of departure from their settlement offers.

Parties who choose not to stipulate are assigned a "stacked" trial date. It has been Judge Zick's practice to

[2]*See* Wisconsin Constitution, Article VII, Sec. 3; sec. 751.07, Stats., 1987–88.

set five cases for trial on a given date. Parties in all five cases are required to appear ready for trial. Judge Zick then weighs the comparative costs of cancelling each case, in terms of witness fees and preparation time, and tries the case that would be most costly to cancel. The remaining cases are assigned another "stacked" date, though Judge Zick states that most all cancelled cases then choose a stipulated trial date.

In the underlying case, on January 28, 1987, Petitioners brought an action against American Family and its insureds, Betty and Melvin Prill, in the circuit court for Waukesha county alleging negligence causing personal injury to Allison Collins and seeking damages. The case was assigned to Judge Zick. A pre-trial conference was held on March 14, 1988. Petitioners appeared in person and were represented by Attorney Stan L. Lenchek. The parties were unable to reach a settlement, and a second pre-trial conference was scheduled for May 16, 1988. Again, no settlement was reached, and a third pre-trial conference was scheduled for October 21, 1988. At the final pre-trial conference, Petitioners demanded $55,000 in damages while American Family offered $35,000. As the parties were unable to achieve a settlement, Judge Zick required them to choose between a "stipulated" or "stacked" trial date. The parties chose a "stipulated" trial date. Attorneys for the parties subsequently signed a written stipulation which provided in part that:

2. Plaintiff, Allison Collins, has advised the court that she will accept no sum less than $55,000 as a compromise settlement of her claims and any cause of action arising thereunder.

3. The defendant, American Family Mutual Insurance Company, has advised the court that it will pay no sum greater than $35,000 as a compromise settle-

ment of the parties claims and any cause of action arising thereunder.

4. The parties have requested that the court schedule this matter as number one, absolute trial before a jury of 12 persons, and they have agreed that they will not alter their positions regarding settlement as set forth in the preceding paragraphs.

5. The parties understand that if a settlement is agreed upon between them hereafter, they will pay the sum of $20,000 to the court to be applied to the general fund, and that amount shall be apportioned, based upon the proportionate change made by either or both parties from their settlement positions as set forth above.

On November 9, 1988, Judge Zick approved the stipulation and assigned a trial date of January 10, 1989.

On December 23, 1988, Attorney Marjan R. Kmiec informed Judge Zick by letter that he had been retained to act as lead trial counsel for Petitioners. In the course of preparing for trial, Attorney Kmiec determined that Petitioners would be "gambling" by going to trial and concluded that a reduction in Petitioners' damages demand was appropriate. On January 6, 1989, Attorney Kmiec phoned Judge Zick and informed him that he would now be acting as sole trial counsel for Petitioners and inquired whether Judge Zick would release the parties from the stipulation in the event the parties settled. Judge Zick stated he would not. Attorney Kmiec contacted counsel for American Family and informed him that Petitioners would be willing to settle their claim for $45,000. A three-way phone conference then took place between counsel for American Family, Attorney Kmiec, and Judge Zick. Judge Zick again refused to release the parties from the stipulation, stating that to do so would "totally destroy" his "stip or stack" system. Subsequent

to the three-way phone conference, counsel for American Family informed Attorney Kmiec that American Family would settle the case for $40,000 on the condition of being released from the stipulation. At oral argument before the court of appeals, Attorney Kmiec stated the $40,000 offer was acceptable to Petitioners.

On January 9, 1989, Petitioners brought this mandamus action in the court of appeals to compel Judge Zick to release the parties from the stipulation. Counsel for American Family informed the court of appeals that American Family did not oppose the writ. The court of appeals ordered the underlying case stayed and certified the mandamus action to this court.

Circuit courts possess inherent discretionary authority to control their dockets with economy of time and effort. *Rupert v. Home Mut. Ins. Co.*, 138 Wis. 2d 1, 7, 405 N.W.2d 661 (Ct. App. 1987). We recognize the problem Judge Zick attempts to address. Circuit courts, inundated with a backload of cases awaiting trial, are often left in the position of having no case to try because the cases scheduled for trial on a given date have settled at the last minute. We commend Judge Zick for his efforts to resolve the difficult calendaring problems faced by circuit courts. We conclude, however, that circuit courts lack the authority to impose upon parties a monetary sanction such as Judge Zick's "stipulated penalty." We therefore grant Petitioners' writ.

Mandamus is an extraordinary legal remedy which will issue only where the party seeking the writ establishes "that it is based on a clear, specific legal right which is free from substantial doubt." *Eisenberg v. ILHR Dept.*, 59 Wis. 2d 98, 101, 207 N.W.2d 874 (1973). The party further must show that the duty sought to be

483

enforced is positive and plain, that there is no other adequate remedy at law, and that he or she will be substantially damaged by non-performance of the duty. *Law Enforce. Stds. Bd. v. Lyndon Station,* 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981). We are satisfied that Petitioners have established sufficient grounds to grant mandamus.

While it is Judge Zick's requiring parties to stipulate to the penalty that is directly at issue here, it is his "stacking" system which acts initially to move the parties towards settlement. At oral argument, Judge Zick invited this court to consider his "stacking" system.

In comparing his "stacking" system to what Judge Zick refers to as the "numbering system typically employed by Wisconsin trial courts," Judge Zick in his affidavit to this court stated:

> [T]he numbering system subjects the judicial system to maximal exposure by releasing all but one case a few days before trial and hoping that it doesn't settle in the interim. This gamble is lost with amazing regularity and an intolerable number of precious trial days are lost as a result. Additionally, the costs to litigants are not eliminated by any means, since they must prepare and remain available until a few days before trial.

Judge Zick further stated that his system:

> [E]liminates all costs to the judicial system by guaranteeing that there will always be at least one case available for trial. On the other hand, it imposes maximal costs on the litigants whose cases are cancelled on the trial date in the form of wasted counsel fees and the trauma of last minute preparation, wasted expert witness fees and the trauma of last minute cancellation of a long awaited trial.

Judge Zick argues that his "stacking" system guarantees a case will be available for trial and eliminates lost trial time. Judge Zick states his statistics show that of the five cases he "stacks" on a given trial date, three are generally available for trial.

We question the fairness of Judge Zick's "stacking" system in terms of its requiring all of the parties assigned a given date to appear ready for trial. By requiring five cases to appear ready for trial on a specified date, Judge Zick's "stacking" system exposes a number of parties whose cases will not be heard to substantial costs which, under the systems utilized in other courts, they might not have incurred. In his affidavit to this court, Judge Zick recognized that his statistics show more parties were exposed to these costs than necessary to ensure a case was available for trial. As a result, Judge Zick stated he would amend his "stacking" system to provide only four cases would be assigned to a given trial date. But given Judge Zick's statistics, two cases per "stacked" date settle and thus as least one case would still not be heard. Judge Zick's "stacking" system is unfair because it "guarantees" that a case will be available for trial at the expense of parties who appear on the "stacked" date ready for trial, rather than at the expense of those parties who settle at the last minute.

We also question the fairness of Judge Zick's "stacking" system in terms of its coercive effect. Whether four or five cases are required to appear ready for trial on a particular date, some cases will be cancelled and unless the parties agree to settle or choose a "stipulated" trial date, the parties will be assigned another "stacked" date. There is no guarantee, however, that the cases will be tried on the reassigned date. At oral argument, Judge Zick stated that he would give priority to a reassigned case, but it may well be that the reassigned date includes

other reassigned cases. Judge Zick's "stacking" system is coercive to the extent that for parties unable to settle, the only way to avoid perpetuating the costs and uncertainties of Judge Zick's "stacking" system is to choose a "stipulated" trial date, a procedure which we conclude is unauthorized. The coerciveness of Judge Zick's "stacking" system is borne out by his statement that most all "stacked" cases which have been cancelled choose a "stipulated" trial date the next time around.

Having made these observations, we address the question of whether Judge Zick is authorized to require parties to stipulate to a penalty in order to obtain a date certain for trial. The "stipulated penalty" serves several purposes in Judge Zick's "stip" system. First, it ensures parties are in fact stating their best offers when entering into the stipulation. Second, it ensures parties will not still settle at the last minute and agree to rescind the stipulation. Finally, because the "stipulated penalty" is payable to the "general fund," Judge Zick's "stip" system, like his "stacking" system, exposes parties rather than the court to the inconvenience and costs of a last minute settlement. It is Judge Zick's authority to impose the "stipulated penalty" that Petitioners challenge here.

■

We conclude circuit courts lack the authority to require parties to stipulate to a penalty such as presented here as the "price" to bring litigation to an end. We fail to see the value of spending judicial time trying a case the parties have agreed to settle. Obviously, the court's time can be better utilized attending to other matters.

When considered in the isolated context of the "stipulated penalty's" effect in terms of motivating parties to state their best offers at the pre-trial state, it is difficult to find fault with Judge Zick's requiring parties to stipulate to the penalty. We conclude, however, that

the "stipulated penalty" illegally acts as an excessive sanction and illegally attempts to recoup sums to compensate the court for its lost trial time.

The legislature has addressed the subject of the sanctions that may be imposed upon parties for their last minute settlement and cancelling of a trial date. Section 814.51, Stats., 1987–88 provides:

> **Jury fees; discretion of court.** The court shall have discretionary authority in any civil or criminal action or proceeding triable by jury to assess the entire cost of one day's juror fees for a jury, including all mileage costs, against either the plaintiff or defendant or to divide the cost and assess the cost against both plaintiff and defendant, or additional parties plaintiff or defendant, if a jury demand has been made in any case and if a jury demand is later withdrawn within 2 business days prior to the time set by the court for the commencement of the trial. The party assessed shall be required to make payment to the clerk of circuit court within a prescribed period and the payment thereof shall be enforced by contempt proceedings.

Section 814.51, Stats., was intended by the legislature to remedy the problem Judge Zick seeks to address. The statute's purpose is to "regulate conduct which is disruptive of the orderly business of the court." *State v. Foster,* 100 Wis. 2d 103, 108, 301 N.W.2d 192 (1981).

> [Section 814.51, Stats.,] authorizes a trial court to assess against a party the cost of one's days jury fees when jury trial date has been established and the parties have failed to give the court reasonable notice of a cancellation of the jury proceeding. The authority granted by sec. 814.51 is designed to inure to the benefit of the court. It is a tool which may be utilized to effect an orderly management of the court's calen-

dar. As such, an assessment of cost or expense to a county in calling a jury under sec. 814.51 is akin to a penalty for conduct disruptive to the administration of justice.

*Id.* at 108-09.

In addition, Judge Zick's "stipulated penalty" acts as a means for the court to receive compensation for lost trial time by having the penalty payable to the "general fund" as Judge Zick described it. But the purpose of assessing jury fees pursuant to sec. 814.51, Stats., is "to regulate conduct which is disruptive of the orderly business of the court. The purpose is not to create a means of recouping sums expended by the court to impanel a jury." *Id.* at 108.

Judge Zick argues that he may impose the "stipulated penalty" upon parties under the inherent authority of courts to conduct business in an orderly and efficient manner.

We disagree that the inherent authority of courts permits Judge Zick to impose the "stipulated penalty" his "stip" system includes. In *Latham v. Casey & King Corp.*, 23 Wis. 2d 311, 127 N.W.2d 225 (1964), this court described the inherent authority of courts as follows:

The general control of the judicial business before it is essential to the court if it is to function. "Every court has inherent power, exercisable in its sound discretion, *consistent within the Constitution and statutes,* to control disposition of causes on its docket with economy of time and effort."

*Id.* at 314. (Citations omitted; emphasis added.)

This court has previously considered the inherent authority to courts to impose sanctions upon parties for the disruption caused by a last minute settlement. In *Jacobson v. Avestruz,* 81 Wis. 2d 240, 260 N.W.2d 267

488

(1977), this court, in accord with *Latham,* held the circuit court possessed inherent authority to assess the costs of impaneling a jury where the parties reached settlement after trial had commenced. *Id.* at 245–48. The costs could not be assessed pursuant to sec. 270.165, Stats., 1973–74 (later renumbered sec. 814.51, Stats.), because the statute was inapplicable once trial had begun.

■

*Latham* and *Jacobson* establish that under a court's inherent authority, the sanction to be imposed upon parties for disrupting the court's calendar by a last minute settlement must be consistent with that authorized under sec. 814.51, Stats.

Judge Zick states sec. 814.51, Stats., is wholly inadequate to remedy the disruptions and costs caused by a last minute settlement. Judge Zick readily admits the amount of his "stipulated penalty" bears no relation to the sanctions provided by the statute. The only criteria Judge Zick considers in determining the amount of the penalty is a consideration of the amount necessary to ensure the parties have stated their best offers.

■

There must, however, be a reasonable relationship between the disruption a party's misconduct causes and the sanction to be imposed as a result. In *Foster,* this court stated:

> When a defendant cancels a jury trial at the eleventh hour to accept a plea negotiation offered by the state, he risks the taxation of costs under sec. 973.06, and the discretionary assessment of jury fees under sec. 814.51. *The penalty placed upon an untimely alteration of trial schedules is a reasonable regulation in the administration of justice. It does not discourage the exercise of the defendant's right to a trial by jury*

489

*in the first instance, nor does it prohibit him from changing trial plans after having exercised the jury trial right.* If the defendant decides to waive a jury or change a plea of not guilty, he or she may avoid the penalty of sec. 814.51 by simply timely notifying the court. The statute merely functions to deter disruptive practices which contribute to inefficiency in the court system.

*Id.* at 110 (emphasis added).

Judge Zick, by means of his "stipulated penalty," arbitrarily imposes a sanction which is inconsistent with both acts of the legislature and the previous decisions of this court, and its effect is to unreasonably restrict a party's ability to control the prosecution of their case. *See generally* SCR 60.01(8) and (12).

We further conclude that to the extent Judge Zick's "stipulated penalty" restricts parties from settling their case in circumstances such as presented here, his "stip" system violates this court's long-standing policy in favor of settlements. *See, e.g., Rayborn v. Galena Iron Works Co.,* 159 Wis. 164, 169, 149 N.W. 701 (1914); *Schilling v. Milwaukee Bedding Co.,* 197 Wis. 250, 156, 221 N.W. 743 (1928); *Radlein v. Industrial Fire & Cas. Ins. Co.,* 117 Wis. 2d 605, 622, 345 N.W.2d 874 (1984).

Judge Zick argues that parties who freely enter into such a stipulation are only receiving that which they bargained for. The parties received a date certain for trial in exchange for agreeing to liability for the "stipulated penalty" in the event they subsequently settle. At oral argument, Judge Zick stated he would release parties from a stipulation only where there occurred a change in circumstances which was not reasonably foreseeable and which substantially altered a party's position. Judge Zick determined that under the facts here, relief was not warranted.

Judge Zick argues this court's decision in *Marriage of Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984), estops Petitioners from rescinding the stipulation. *Rintelman,* however, does not apply to stipulations which are "illegal or against public policy." Id. at 596. We also question whether in view of the coerciveness of Judge Zick's "stacking" system, parties can be considered to have "freely" entered into the stipulation to obtain a date certain for trial. *See id.* In addition, in *Rintelman* only one party sought to be released from the stipulation while the other party sought its enforcement. Here, both Petitioners and American Family desire relief from the stipulation. Judge Zick argues that the court is a party which may seek to enforce the stipulation. We disagree that the court may be reduced to an "adverse party" forcing the parties to forego settlement. The court's role in civil litigation is to provide an impartial forum for parties to resolve their disputes.

We conclude Petitioners undeniably possess the right to settle their case. *See* Wisconsin Constitution, Article I, Sec. 9. Stipulations may only be enforced or avoided with the court's approval. *Burmeister v. Vondrachek,* 86 Wis. 2d 650, 664, 273 N.W.2d 242 (1979). Judge Zick determined the court's interest in not compromising his "stip or stack" system more important than Petitioners' interest in settling their case. Under the circumstances here, we deem the latter interest more compelling. *See generally Alexander v. Riegert,* 141 Wis. 2d 294, 300–01, 424 N.W.2d 636 (1987). To not grant relief from the stipulation would deprive Petitioners of the right to settle their case and avoid the trauma and expense of trial and the risk of an unfavorable verdict. While we commend Judge Zick for his efforts, we note, as the court of appeals did, that the statistics Judge Zick

provided from the Wisconsin Court Information System suggest his "stip or stack" system produces relatively the same results in terms of disposition time and rate as the other large claims division of the Waukesha county circuit courts.[3]

*By the Court.*—Petitioners' writ of mandamus is granted.

---

[3]The Wisconsin Court Information System records show that the four large claims branches for Waukesha County had the following number of cases pending at the close of 1988:

| | Branch 5 | Branch 6 | Branch 7 | Judge Zick Branch 9 |
|---|---|---|---|---|
| | 524 | 503 | 536 | 527 |

The average and median times in days from filing to disposition for these respective branches for personal injury and property damages cases tried in 1987 and 1988 are as follows:

| | Branch 5 | Branch 6 | Branch 7 | Judge Zick Branch 9 |
|---|---|---|---|---|
| 1987 ave. | 722 | 843 | 799 | 1035 |
| 1987 med. | 751 | 708 | 650 | 981 |
| 1988 ave. | 620 | 871 | 718 | 763 |
| 1988 med. | 705 | 713 | 673 | 625 |