COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP801**

STATE OF WISCONSIN

Cir. Ct. No. 2014FA1277

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

SARAH M. REED F/K/A SARAH M. PAPPATHOPOULOS,

PETITIONER-RESPONDENT,

V.

CHRISTOPHER T. PAPPATHOPOULOS,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: ELLEN K. BERZ, Judge. *Reversed and cause remanded with directions*.

Before Blanchard, Graham, and Nashold, JJ.

¶1 GRAHAM, J. Sarah Reed and Christopher Pappathopoulos were divorced in 2016 following a bench trial on issues that included child support.

During the trial, Reed asked the circuit court to calculate the amount of child support using the parties' base salaries only, without considering other sources of income such as Reed's bonus or Pappathopoulos's side jobs. Reed introduced an exhibit with her proposed calculation, and Pappathopoulos's attorney later stated, "We're going to accept [Reed's] child support calculation ...."

¶2 In early 2018, Reed reported that she had received a substantial bonus and other miscellaneous income that significantly increased her total 2017 income from what it had been at the time of trial. Pappathopoulos filed a motion asking the circuit court to modify child support to reflect Reed's total 2017 income, and the court dismissed the motion by written order issued April 5, 2019. The court asserted that Pappathopoulos had "stipulated to child support being calculated on base salaries only" at the time of the divorce, and that it was not equitable to relieve him from his stipulation. In this appeal, Pappathopoulos argues that there was no stipulation and that the court erred by dismissing his motion based on equitable estoppel.

¶3 We conclude that, even if the on-the-record statements by Pappathopoulos's trial attorney are properly characterized as a stipulation to Reed's proposed framework for calculating child support, they cannot be reasonably interpreted as an agreement that the parties were giving up the statutory right to seek a future modification based on a substantial change in bonus or side income of either party. Thus, the circuit court erred when it dismissed the motion based on equitable estoppel. Further, the court did not determine whether there was a substantial change in circumstances justifying a child support modification, and there is no other basis in the record to affirm the circuit court's denial of the motion. Therefore, we reverse the order and remand for the court to consider that question now, consistent with this opinion.

**BACKGROUND**

¶4   Reed and Pappathopoulos are the parents of one minor child, and they were divorced following a bench trial in 2016.  Prior to trial, they filed a written stipulation that, among other things, Reed would have 65% placement of their child.  The parties did not reach any pre-trial agreements on spousal maintenance or child support, and these issues were set for trial.

¶5   During the trial, Reed proposed that the circuit court calculate child support using the parties' base salaries only, without considering Reed's bonus income and Pappathopoulos's side income.  Reed explained that she made this proposal to simplify the calculation and minimize conflict because Reed's bonus and Pappathopoulos's side income were uncertain and were points of contention between the parties.  Reed testified that her bonuses fluctuated in an unpredictable manner from year to year.[1]  She also suggested that Pappathopoulos was hiding significant income from his side auto sales business and various skiing-related side jobs.  Reed testified that she didn't think "we can ever get a clear picture of [Pappathopoulos's] true income due to [the fact that he is paid in cash for his side jobs] and the difficulties in obtaining information from him."

¶6   Reed introduced a spreadsheet calculating child support using the parties' 2016 base employment incomes, without accounting for Pappathopoulos's side income or Reed's bonus.  Apart from the fact that Reed's proposal excluded these income sources (which would presumptively be included in a guideline

---

[1] On cross examination, Reed acknowledged receiving bonuses in excess of $15,000 and $18,000 in previous years, and that the five-year average of all of her bonuses was more than $10,000 each year.  She admitted that using her base salary alone would exclude a "pretty hefty portion of [her] salary" in "some years."

calculation),[2] there is no dispute that Reed's calculation was otherwise based on standard child support guidelines. Pappathopoulos did not argue against Reed's proposal to exclude bonuses and side income for purposes of child support, nor did he present his own guidelines calculation. His attorney told the circuit court, "We're going to accept their child support calculation …." In Reed's view, this on-the-record statement constituted a stipulation between the parties.

¶7      At the close of the divorce trial, the circuit court issued an oral ruling. Among other things, the court found that Pappathopoulos "is hiding income," and it denied his request for maintenance from Reed. The court then turned to child support and ordered Pappathopoulos to pay $422 plus $16 for health insurance each month in child support, consistent with Reed's calculation.

¶8      During the oral ruling, the court and Pappathopoulos's attorney had an exchange in which the attorney disagreed that Reed's child support proposal "benefits [Pappathopoulos] in the long term" but confirmed that Pappathopoulos agreed "with the calculation." Since the parties argue at length about the meaning of this exchange, we set it forth in full:

> THE COURT: There are a few ways to calculate [child support]. [Pappathopoulos's attorney] wisely has agreed that [Reed's] calculation on exhibit ....
>
> [Discussion regarding the proper exhibit number]
>
> THE COURT: [Reed's calculation] actually uses the base salaries of both the parties versus all the income of both the parties, which benefits [Pappathopoulos.]
>
> [PAPPATHOPOULOS'S ATTORNEY]: I don't agree with you, your honor, but that's okay.

---

[2] *See* WIS. STAT. § 767.511(1j) (2017-18); WIS. ADMIN. CODE § DCF 150.02(13). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

THE COURT: That it benefits him? I think --

[PAPPATHOPOULOS'S ATTORNEY]: I don't think it benefits him long-term.

THE COURT: Ah. Well, you're the one who said we agree with the calculation.

[PAPPATHOPOULOS'S ATTORNEY]: Yeah.

THE COURT: Okay. Well, then if you still agree with the calculation --

[PAPPATHOPOULOS'S ATTORNEY]: Well, we're asking -- based on the fact that you denied maintenance, we would be asking for a deviation down.

THE COURT: Okay. Let me get the right number and then I'll talk about that.

The court ultimately denied Pappathopoulos's request for a downward deviation.

¶9 The circuit court's oral rulings at trial were memorialized in the written divorce judgment, which was later amended. Pappathopoulos appealed several aspects of the amended judgment, including the court's finding that he was hiding income and the court's conclusion that he was not entitled to maintenance. *See Pappathopoulos v. Pappathopoulos*, No. 2017A399, unpublished slip op. (WI App June 21, 2018) (affirming the circuit court's determination that Pappathopoulos was hiding income and its spousal maintenance award but reversing the court's order requiring the parties to submit parenting disputes to an appointed parent coordinator). However, Pappathopoulos did not appeal any of the court's decisions related to child support.

¶10 In early 2018, the parties exchanged year-end financial information, and Pappathopoulos learned that Reed's total income from 2017 was significantly higher than her total income from 2016. Specifically, Reed had received a $27,212 bonus, in addition to a significant one-time capital gain for selling stock

that had been awarded to her in the property division and another one-time payment related to a work vehicle.

¶11 Pappathopoulos filed a motion to modify child support pursuant to WIS. STAT. § 767.59(1f), which permits modification of child support terms "upon a finding of a substantial change in circumstances" since the last child support order. He asserted that "in the interest of fairness … child support should be set in the amount to be determined by the parties' current financial information to include bonus income, as it is substantial." The circuit court held an evidentiary hearing, and Reed and Pappathopoulos both testified. Reed testified that she didn't know why her 2017 bonus was so much higher in 2017 than in previous years, that it was "just the variable nature of [her] bonus," and that she was expecting only a $4,100 bonus in 2018. Reed argued that the parties agreed at trial to exclude bonus and side income when calculating child support, and that the court should not deviate from that agreement.

¶12 The circuit court dismissed Pappathopoulos's motion on the ground that he was equitably estopped from requesting the child support modification.[3] The court took the position that Pappathopoulos and Reed had stipulated during trial that income for purposes of child support would be calculated using the parties' base incomes only. It concluded that this stipulation barred Pappathopoulos from seeking a modification to account for Reed's other sources

_____

[3] Although Pappathopoulos filed his motion in February 2018, he did not get a final circuit court decision until April 2019 due to a number of procedural steps that occurred in that court. Initially, the motion was denied by a family court commissioner on April 17, 2018. Pappathopoulos requested a de novo hearing before the circuit court, and that hearing occurred on September 24, 2018. The parties submitted written briefs after the hearing, so the court did not take the matter under advisement until several months later.

of income. The court did not reach the issue of whether there had been a substantial change in circumstances.

## DISCUSSION

¶13 According to Reed, the circuit court correctly concluded that Pappathopoulos was estopped from seeking a modification as a result of a stipulation. Reed points to the statement that "[w]e're going to accept [Reed's] child support calculation" and the attorney's later affirmation that Pappathopoulos "agreed with the calculation." Pappathopoulos disputes Reed's characterization of the comments made by his attorney, contending that "there was no stipulation whatsoever" and that his attorney's on-the-record statements do not meet the legal requirements for an enforceable stipulation. He also contends that the statements of his counsel during the divorce trial were "far from knowing and voluntary waivers" of his right to seek modification of the method of calculating child support, and that he did not "enter into a stipulation to exclude income … in future years."

¶14 As explained below, the resolution of this appeal turns on the proper interpretation of a purported stipulation between the parties. In Section I, we conclude that, even assuming the parties reached a stipulation, the circuit court's decision was based on an erroneous interpretation of that stipulation, and in Section II, we discuss the appropriate remedy.

## I. The Purported Stipulation

¶15 A stipulation is a contract made in the course of a judicial proceeding. *Ceria M. Travis Acad., Inc. v. Evers*, 2016 WI App 86, ¶14, 372 Wis. 2d 423, 887 N.W.2d 904. When a party enters into a stipulation, that party

7

may be equitably estopped from later seeking relief from its terms. *See **Rintelman v. Rintelman***, 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984).[4]

¶16     Here, the circuit court determined that Pappathopoulos "stipulated to child support being calculated on base salaries only," and we assume without deciding that the court is right.[5]  But the circuit court went further and concluded that, as a result of the stipulation, Pappathopoulos is estopped from seeking a subsequent modification based on a change in circumstances, namely, Reed's 2017 bonus income.  To reach this conclusion, the court must have interpreted the stipulation *not only* as an agreement about the calculation of child support in the divorce judgment, *but also* as an agreement that going forward, the parties were giving up the statutory right to seek a modification of that amount based on a change in bonus or side income.  *See* WIS. STAT. § 767.59(1f).  Accordingly, the circuit court's denial of the motion rests upon the court's interpretation of the parties' stipulation.

¶17     As with the interpretation of other contracts, the interpretation of a stipulation is generally a question of law reviewed without deference to the circuit court.  ***Jalovec v. Jalovec***, 2007 WI App 206, ¶10, 305 Wis. 2d 467, 739 N.W.2d

---

[4] To invoke estoppel, a party must show "that both parties entered into the stipulation freely and knowingly, that the overall settlement is fair and equitable and not illegal or against public policy, and that one party subsequently seeks to be released from" the terms of the stipulation "on the grounds that the court could not have entered the order it did without the parties' agreement." ***Rintelman v. Rintelman***, 118 Wis. 2d 587, 596, 348 N.W.2d 498 (1984).

[5] The parties argue at length about whether the alleged stipulation meets the legal requirements for stipulations under WIS. STAT. §§ 767.34 and 807.05.  We need not address these arguments to resolve this appeal, since our interpretation of Pappathopoulos's attorney's on-the-record statements is dispositive.  *See **Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

834 (when an equitable estoppel claim requires a court to "construe the stipulation agreement between the parties," it is a question of law reviewed de novo). When interpreting a stipulation, courts seek a construction that will effectuate what appears to have been the intention of the parties, as expressed by the words they chose to use when memorializing their agreement. *Duhame v. Duhame*, 154 Wis. 2d 258, 264, 453 N.W.2d 149 (Ct. App. 1989). The context in which the stipulation arises can be important in determining the intent of the parties. *Stone v. Acuity*, 2008 WI 30, ¶92, 308 Wis. 2d 558, 747 N.W.2d 149.

¶18 For reasons we explain below, we conclude that the circuit court erroneously interpreted the stipulation between the parties. To understand our conclusion, it is helpful to provide a brief overview of WIS. STAT. § 767.59(1f). Although some terms of a divorce decree may not be modified, the court has discretion to modify an award of child support pursuant to § 767.59(1f) "upon a finding of a substantial change in circumstances." *See Beaupre v. Airriess*, 208 Wis. 2d 238, 244, 560 N.W.2d 285 (Ct. App. 1997) (child support provisions "are not subject to traditional principles of claim preclusion and may be altered even after a final judgment"); *Ondrasek v. Tenneson*, 158 Wis. 2d 690, 695, 462 N.W.2d 915 (Ct. App. 1990) (the policy behind the statute is "the best interests of the child are served" by allowing modification for a change in circumstances unforeseen at the time the divorce judgment was entered). With this background in mind, if the circuit court's interpretation of the parties' stipulation were correct, we would expect to see some language from the parties that expressly addressed future consequences of the agreement. *Cf., e.g.*, *May v. May*, 2012 WI 35, ¶9, 339 Wis. 2d 626, 813 N.W.2d 179 (parents stipulated to limit future child support modifications with language specifying that a party "may not file for a [child support] reduction" under certain circumstances).

9

¶19    The statements made by Pappathopoulos's attorney can readily be interpreted to mean that Pappathopoulos was agreeing to Reed's proposed child support calculation for purposes of establishing support requirements in the divorce judgment.  But Reed cannot point to any language used by the attorney that reasonably suggests that Pappathopoulos was agreeing to any limitations on the statutory right to seek future modifications based on a change of circumstance regarding bonus or side income.  Likewise, Reed does not point to any discussion in the record of whether the child support order would be modifiable, or whether bonus and side job income could ever be used to recalculate child support.  At best, Reed could point to her own testimony that "[w]e need a very black and white settlement that minimizes the need to go back and forth on items because it just creates too much tension."  But just because Reed expressed a desire for finality does not mean Pappathopoulos agreed to it.

¶20    The parties also argue at length about whether such a stipulation preventing future modification would be enforceable.[6]  However, because we conclude that the parties did *not* stipulate to limit Pappathopoulos's right to request future child support modifications based on a change in bonus income, we need not resolve these arguments.

¶21    Finally, Reed appears to argue that the divorce judgment itself limits Pappathopoulos's right to seek future modifications based on a change in Reed's

---

[6] *See, e.g.*, ***Krieman v. Goldberg***, 214 Wis. 2d 163, 571 N.W.2d 425 (Ct. App. 1997) (concluding that a stipulation that imposed an unmodifiable floor on the payor's payment obligations without any durational limit was void as against public policy); ***Ondrasek v. Tenneson***, 158 Wis. 2d 690, 462 N.W.2d 915 (Ct. App. 1990) (concluding that a stipulation waiving or setting a ceiling on child support obligations was void as against public policy); *but see **May v. May***, 2012 WI 35, 339 Wis. 2d 626, 813 N.W.2d 179 (upholding stipulation that imposed a 33-month unmodifiable floor on parent's child support obligation).

bonus income, and that Pappathopoulos forfeited the arguments that he makes in this appeal by not including them in his initial appeal of the divorce judgment. The divorce judgment's provision on child support provides as follows:

> Child support shall be calculated based on each party's base employment incomes only. Other sources of income for either party, including but not limited to skiing income, coaching income, self-employment income, and bonus income, shall not be included as income available for support and shall not be included in the calculation for child support.

Reed's argument about the divorce judgment fails for the same reason that her argument about the on-the-record statements fails—nothing in this provision can be interpreted as a limitation on the statutory right to seek a future modification. Because the court did not impose such a limitation, Pappathopoulos was not required to appeal it.

¶22    For the foregoing reasons, we conclude that the parties did not stipulate to give up the statutory right to seek a modification of child support based on a future change in bonus or side income. And it follows from this conclusion that the circuit court erred by dismissing Pappathopoulos's motion on equitable estoppel grounds. The doctrine of equitable estoppel may be applied when a party "seeks to be released" from a stipulation. *Rintelman*, 118 Wis. 2d at 596. Since Pappathopoulos never agreed to any limitation on his ability to seek a modification of child support, he does not need to be "released" from any stipulation to bring his motion.

## II.  The Remedy

¶23    Having concluded that the circuit court erred by dismissing the motion on equitable estoppel grounds, we now turn to the appropriate remedy.

Pappathopoulos appears to contend that he is entitled to a modification of his child support obligation as a matter of law. By contrast, Reed argues that even if equitable estoppel does not apply, we should uphold the circuit court's ruling as an appropriate exercise of its discretion. For the reasons that follow, we reject the remedies proposed by both parties.

¶24 Pappathopoulos argues that excluding bonus income violates Wisconsin statutes governing child support calculations, and that the circuit court should recalculate child support now, this time considering both parties' total income from 2017. Specifically, he argues that the original award violates WIS. STAT. § 767.511 and WIS. ADMIN. CODE § DCF 150.02(13), and that as a result of these alleged violations, we should direct the circuit court "to use all of the parties' income from all sources for child support calculations" on remand.

¶25 We reject the remedy proposed by Pappathopoulos. As Reed correctly points out, to the extent that Pappathopoulos is attempting to challenge the circuit court's original child support award, that challenge comes far too late. Pappathopoulos forfeited that challenge by failing to include it in his appeal of the original divorce judgment. At this point, Pappathopoulos can only seek a modification under WIS. STAT. § 767.59(1f)(c), which gives broad discretion to the circuit court to modify a child support order if there has been a "substantial change of circumstances sufficient to justify revision ...." *See **Beaupre**,* 208 Wis. 2d at 243 (modification of child support is "committed to the sound discretion" of the circuit court).

¶26 Turning to Reed's proposed remedy, she asks us to uphold the circuit court's denial of the motion as an appropriate exercise of its discretion. She notes that the ultimate determination of child support "rests within the sound

discretion" of the circuit court and will not be overturned unless the court "abuses its discretion." *Edwards v. Edwards*, 97 Wis. 2d 111, 116, 293 N.W.2d 160 (1980). But, for reasons we now explain, the court's order presents us with no discretionary determination to review.

¶27 In considering a motion to modify child support, a court first determines whether there has been a "substantial change of circumstances sufficient to justify revision ...." WIS. STAT. § 767.59(1f)(c). This is a mixed question of fact and law—the court makes "findings of fact regarding what changes have occurred in the circumstances of two parties," and it concludes as a matter of law "whether those changes are substantial." *Benn v. Benn*, 230 Wis. 2d 301, 307, 602 N.W.2d 65 (Ct. App. 1999). If "a substantial change in circumstances has been shown," the circuit court must then "exercise its discretion as to whether and how child support should be modified. *Jalovec*, 305 Wis. 2d 467, ¶21; *Winkler v. Winkler*, 2005 WI App 100, ¶¶23-24, 282 Wis. 2d 746, 699 N.W.2d 652.

¶28 Thus, when considering a motion to modify child support, the circuit court first makes findings regarding "what changes have occurred" and concludes whether those changes are substantial, and if so, it exercises discretion about what the child support terms should be. Here, the circuit court did not undertake the first step and determine whether a substantial change of circumstances occurred. Instead, as explained above, its decision was based on the erroneous interpretation of the parties' stipulation and application of the doctrine of equitable estoppel. Accordingly, the court never reached the discretionary stage of its analysis and made no determination that we could uphold as an appropriate exercise of discretion. To the extent that Reed asks us to determine in the first instance whether a "substantial change of circumstances sufficient to justify revision"

occurred, we decline to do so. That determination involves making findings of fact. We are not a fact-finding court, *see **Harwick v. Black***, 217 Wis. 2d 691, 703, 580 N.W.2d 354 (Ct. App. 1998), and the circuit court is uniquely suited to determine whether there has been a substantial change in circumstances sufficient to justify revision because such determinations depend heavily upon an analysis of the underlying facts, *cf. **Rosplock v. Rosplock***, 217 Wis. 2d 22, 33, 577 N.W.2d 32 (Ct. App. 1998) (where a circuit court's legal conclusion "is intertwined with its factual findings," we give weight to the court's decision).

¶29     Accordingly, we reverse the order and remand for the circuit court to evaluate Pappathopoulos's motion under WIS. STAT. § 767.59(1f)(c). And in an effort to assist the court in streamlining the proceedings on remand, we provide the following guidance. First, we are not directing the court to hold a new evidentiary hearing on remand. Instead, the court may consider whether, in its judgment, it is appropriate to decide Pappathopoulos's motion based on the evidence that is already in the record, taking argument from the parties on this point as it deems appropriate. Second, although we reverse the order on appeal, this opinion should not be interpreted as preventing the circuit court from considering the same facts underlying that order when determining whether, under § 767.59(1f)(c), there has been a "substantial change of circumstances sufficient to justify revision."

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.