In re the MARRIAGE OF:

Suzanne R. MAY, Petitioner-Respondent,

v.

Michael T. MAY, Respondent-Appellant.

Supreme Court

*No. 10AP177. Oral argument October 6, 2011.
—Decided April 3, 2012.*

2012 WI 35

(Also reported in 813 N.W.2d 179.)

For the respondent-appellant there were briefs by *Keith Wessel, Kristen Lehker* and *Wessel, Lehker & Fumelle, Inc.*, Madison, and *Angela C. Foy* and *Daniel E. Exner, Cordell Law, LLP,* Milwaukee, and oral argument by *Keith Wessel.*

For the petitioner-respondent there was a brief by *Robert Stanton Jones* and *Reinhart Boerner Van Deuren, S.C.*, Milwaukee, and oral argument by *Robert Stanton Jones.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case is before the court on certification by the court of

appeals, pursuant to Wis. Stat. § 809.61 (2007–08).[1] The certified question is whether a stipulation and order establishing a 33–month unmodifiable floor for child support payments is enforceable.

¶ 2. The circuit court for Dane County concluded that the order was enforceable when Michael May (Michael), the payor spouse, sought to reduce his child support payments to his former wife, Suzanne May (Suzanne), a little more than one year after entry of the order. On Michael's appeal from the circuit court's order, the court of appeals certified the appeal to us because existing case law could be read as conflicting and because the court of appeals concluded that there existed a need for clarification of the proper legal standard upon which to evaluate unmodifiable floors for child support payments.

¶ 3. We conclude that the Mays' stipulation and order for child support is enforceable. The parties freely and knowingly entered into the stipulation at issue, and the terms of the stipulation were fair and equitable to the parties. Furthermore, the agreement is not contrary to public policy because the circuit court retains its equitable power to consider circumstances in existence when the stipulation was challenged that were unforeseen by the parties when they entered into the agreement if those circumstances adversely affect the best interests of the children. Michael has not demonstrated the existence of such circumstances. Accordingly, we affirm the decision of the circuit court.

## I. BACKGROUND

¶ 4. Michael and Suzanne May were married on November 9, 1996. During the couple's almost nine

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

years of marriage, they had two children, N.N.M. in 1998 and J.J.M. in 2002. In mid-2005, Suzanne petitioned for divorce in the circuit court for Will County, Illinois, and on October 25, 2005, that court issued a judgment dissolving the Mays' marriage. The divorce judgment incorporated the parties' Marital Settlement Agreement and Joint Parenting Agreement, in which the couple stipulated to shared custody of the children, as well as child support payments from Michael to Suzanne.

¶ 5. At the time of the stipulation, Michael was unemployed, having recently lost his job as a packaging engineer at Molex, Inc. Because Michael was unemployed at that time, the parties agreed that his child support payments would be $444.44 per month, in addition to certain past due payments to be made soon after entry of the judgment of divorce, as well as costs for daycare and extracurricular activities for the children. As part of the stipulation, Michael was required to inform Suzanne of any changes in his employment, at which point his support obligations would be recalculated. The stipulation also provided that Michael was responsible for 50 percent of the children's medical, dental, and vision insurance premiums until he became reemployed, after which he would be responsible for 100 percent of such premiums.

¶ 6. On September 25, 2006, Michael registered the Illinois court's judgment in the Dane County circuit court and moved the Wisconsin court to modify the judgment of divorce. Michael sought modifications to his obligations for child support, insurance premiums, and daycare costs, as well as a placement change for the children. Additionally, Michael sought to prevent Suzanne from unilaterally altering the placement schedule when conflicts arose with the children's extracur-

ricular activities, an issue that would continue to raise hackles in the ensuing years.

¶ 7. The family court commissioner, the Honorable Marjorie Schuett, dismissed Michael's motion on January 9, 2007, on the ground that there had been no substantial change in circumstances since the entry of the earlier child support order. Michael sought a de novo hearing before the circuit court, and Suzanne responded by seeking attorney fees for Michael's alleged overtrial.[2] At the hearing, the circuit court allowed the parties ten days to modify or withdraw their motions, after which a guardian ad litem would be appointed. Michael withdrew his motion for modification and, at the same time, the court granted Michael's attorney's request for leave to withdraw from representation.

¶ 8. In July 2007, Commissioner Schuett entered another order based on a new stipulation that established Michael's monthly child support obligation of $1,203. Even before the actual entry of that second comprehensive order, Michael sought a de novo review, and soon thereafter, he again moved to revise physical placement and to modify his support payments. Additionally, in September 2007, Commissioner Schuett issued an order to show cause regarding remedial contempt for Michael's failure to make medical and daycare payments, as well as other various payments owed to Suzanne under the July 2007 order.

***

[2] Overtrial is a family law doctrine that courts employ when one party's approach to litigation is unreasonable and causes the other party to incur unnecessary expense. *Frisch v. Henrichs*, 2007 WI 102, ¶ 2 n.1, 304 Wis. 2d 1, 736 N.W.2d 85. When a finding of overtrial is made, a court may order that the offending party pay a larger part of the attorney fees of the other party. *Id.* at ¶ 2.

¶ 9. In October 2007, Michael again moved to modify his support payments. As the parties prepared for a hearing on the motion in December 2007, he withdrew that motion and the parties entered into another comprehensive stipulation, which ostensibly resolved all outstanding issues between them. On January 7, 2008, the court entered an order based on that stipulation. The stipulation and order included a reaffirmation of Michael's obligation to pay $1,203 per month for child support, which the parties agreed "shall be the minimum amount due for a period of no less than thirty-three (33) months from December 11, 2007, and Michael may not file for a reduction in that amount for the full 33 month period."

¶ 10. As an apparent quid pro quo for Michael agreeing to the unmodifiable floor on child support payments and to make payments accordingly, Suzanne agreed to assume 100 percent of child care costs as of December 2007. Additionally, the parties agreed that Michael could temporarily make decreased payments on his child support arrearages because, as of the date of the stipulation and order, he was working part-time and earning approximately $11 per hour. The specifics of the agreement were read into the record at the hearing before the circuit court, and both the parties and their attorneys acknowledged that the terms stated constituted the agreement of the parties.

¶ 11. Soon after entry of the order, Michael's (new) attorney moved the circuit court to grant leave to withdraw as Michael's counsel, which the court granted. The record then shows more than a year-and-a-half hiatus from litigation between the parties, until June 2009. At that time, Michael sought an order for contempt against Suzanne, on grounds that Suzanne had failed to comply with the previous court orders

regarding shared placement, decision-making authority, and previously adjudicated childcare costs. At the same time, Michael also sought a reduction in his child support payments.[3]

¶ 12.  This recommencement of litigation between the parties in June 2009 marks the beginning of the events directly giving rise to this appeal. In response to Michael's motions, Suzanne countered with a flurry of motions of her own, including motions for contempt, to modify the judgment regarding extracurricular activities, and to dismiss Michael's motion to reduce child support payments. On the eve of the hearing on the various motions, the parties negotiated and ultimately rescheduled the hearing before Commissioner Schuett for September 1, 2009. At the September 1 hearing, Commissioner Schuett denied Michael's motions; Michael sought de novo review in the circuit court.

¶ 13.  On September 23, 2009, the circuit court denied Michael's motion to hold Suzanne in contempt of court, denied Michael's motion to modify his support obligations and held Michael in contempt for his failure to comply with the court's previous orders regarding payment of child support, healthcare costs and past due childcare costs. The court also concluded that Michael was equitably estopped from seeking a reduction in his support payments because allowing such modification would "unravel" the parties' stipulation of December 2007. Michael appealed and the court of appeals certified the appeal to this court, which certification we accepted.

---

[3] The record shows that at the time of his June 2009 motions, Michael had recently lost the job he had held since approximately May 2008, as a result of his position having been "eliminated." The record also shows that during that period of employment, Michael failed to inform Suzanne of his increase in salary, as required by earlier stipulations and orders.

## II. DISCUSSION

### A. Standard of Review

¶ 14. The questions on review are: (1) whether the December 2007 stipulation and order establishing unmodifiable minimum child support payments for 33 months violate public policy, and (2) whether the circuit court erred when it estopped Michael from seeking modification of his child support payments, based on the parties' agreement that was incorporated into a court order. If a trial court's decision to apply estoppel would violate public policy, a reviewing court must reverse that decision as an erroneous exercise of discretion. *See King v. King,* 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999). The determination of whether equitable estoppel may be applied to an uncontested set of facts is a question of law that we review independently of the previous court decision.[4] *Randy A.J. v. Norma I.J.,* 2004 WI 41, ¶ 12, 270 Wis. 2d 384, 677 N.W.2d 630. Where the circuit court has examined the relevant facts and concluded that the elements of estoppel are satisfied, the decision to grant equitable relief is within the court's discretion. *See Affordable Erecting, Inc. v. Neosho Trompler, Inc.,* 2006 WI 67, ¶ 21, 291 Wis. 2d 259, 715 N.W.2d 620.

### B. Child Support Stipulations Generally

¶ 15. The court of appeals noted in its certification that the case law applicable to unmodifiable child support stipulations could be read as conflicting. Ac-

---

[4] Although the parties dispute various facts relating to each other's support or care for the children, the existence of the December 2007 stipulation and the facts that led to that stipulation are not in dispute.

cordingly, the court of appeals requested clarification to ensure proper application of public policy when examining the enforceability of child support stipulations. *See May v. May,* No. 2010AP177, 2011 WL 51579, at \*1 (Wis. Ct. App. Jan. 6, 2011). To clarify the applicable public policy concerns, we examine the relevant cases from both this court and the court of appeals.

¶ 16.  We begin with an examination of the case that Michael found so troubling that he requested it be overruled, *Honore v. Honore,* 149 Wis. 2d 512, 439 N.W.2d 827 (Ct. App. 1989). In *Honore,* the court of appeals held that a stipulation that one parent would continue to pay a certain minimum amount in child support, notwithstanding any changes in income or other finances, was not contrary to public policy. *Id.* at 516–18. The court of appeals relied on the parties' explicit agreement that a reduction in the payor's income would not alter the payor's child support obligation. *Id.* at 516–17. In so doing, the parties stipulated that a decline in the payor's "income or other financial factors" would not constitute cause to reduce child support, even though such a change would otherwise permit, but not obligate, a court to reduce the support obligations. *Id.* at 514; *see also* Wis. Stat. § 767.32 (1985–86).

¶ 17.  Under *Honore,* then, parties are generally free to enter into stipulations governing the minimum amount due for child support, and a circuit court that approves such stipulations by incorporating them into its order will not be reversed to the extent that the order comports with existing law and public policy. We have recently reaffirmed this principle in *Frisch v. Henrichs,* 2007 WI 102, ¶ 75, 304 Wis. 2d 1, 736 N.W.2d 85.

¶ 18.  In *Frisch,* we explained that "we are sensitive to the importance and prevalence of stipulations in helping families going through difficult and litigious

divorces and curbing disagreements [between] the parties. The ability to contract is fundamental to our legal system and may aid parties in settling their divorces more amicably." *Id.* We also stated in *Frisch* that, notwithstanding the rights of parents to stipulate for child support, "the child's best interests are paramount," suggesting that where a conflict between the two values exists, the child's best interests must prevail. *Id.*

¶ 19.   Even prior to the court of appeals' decision in *Honore,* we have long recognized that the best interests of the child are the primary guidepost for courts considering approval and modification of orders for child support. As early as 1970, in *Bliwas v. Bliwas*, 47 Wis. 2d 635, 178 N.W.2d 35 (1970), we recognized that a court is empowered to make such orders and modifications as the best interests of the child may require. *Id.* at 639. We also recognized that a court exercising its equitable authority could issue certain child support orders based on the stipulation of the parties, even though the provisions to which the parties stipulated could not be imposed absent the agreement. *See id.* at 638–40.

¶ 20.   In *Bliwas,* the payor father had agreed to pay child support for one of the children until that child reached age 21 in exchange for reduced support payments during the child's minority. *See id.* at 640. We concluded that the stipulation did not violate public policy and that it was enforceable between the parties. *Id.* at 638–41. Our conclusion rested not solely on a theory of private contract or inherent authority of the court, but on equitable principles that required that " 'a party who procures or consents to the entry of [a] decree is estopped to question its validity, especially where he has obtained a benefit from it.' " *Id.* at 640 (citation omitted).

¶ 21.   Soon after *Bliwas,* we held in *Severson v. Severson,* 71 Wis. 2d 382, 238 N.W.2d 116 (1976), that an automatic reduction clause in a child support stipulation (reducing the father's payments by 20 percent upon each of five children's reaching the age of majority) did not violate public policy. *Id.* at 387–88. Therein, we again held that where the parties reached an agreement on a particular provision in the child support stipulation, and where that provision did not, either on its face or in effect, interfere with the best interests of the children, the courts would not excuse enforcement of the provision. *See id.* at 386–88.

¶ 22.   In *Rintelman v. Rintelman,* 118 Wis. 2d 587, 348 N.W.2d 498 (1984), we upheld a stipulation to continue spousal maintenance payments after the payee wife's remarriage, on the ground that she had relied on the agreement and, therefore, the payor husband was estopped from denying his continuing obligation. We stated in *Rintelman* that no quid pro quo was necessary to demonstrate the applicability of estoppel; rather, in the context of spousal maintenance and child support:

> [A]ll that need be shown to constitute an estoppel is that both parties entered into the stipulation freely and knowingly, that the overall settlement is fair and equitable and not illegal or against public policy, and that one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties' agreement.

*Id.* at 596.

¶ 23.   Accordingly, we recognize that Wisconsin courts have long utilized their equitable authority to uphold stipulations governing child support, and that

such stipulations should be upheld unless doing so would threaten the best interests of the children. The cases in which binding support agreements have been invalidated typically have involved factual scenarios in which enforcement of the agreements would have run afoul of the best interests of the child. These specific scenarios, however, have not materially altered the underlying rule of law where stipulations are reviewed to determine whether they are in the best interests of the child. This policy continues to guide Wisconsin courts in their evaluations of child support agreements. *See, e.g., Severson,* 71 Wis. 2d at 387–88, *Bliwas,* 47 Wis. 2d at 639–40.

¶ 24. The prototypical case in which an unmodifiable agreement has been invalidated involves a stipulation limiting the ability of a parent receiving child support to act in the best interests of the children. For example, in *Ondrasek v. Tenneson,* 158 Wis. 2d 690, 462 N.W.2d 915 (Ct. App. 1990), the court of appeals invalidated a stipulation that provided for "periodic payments," but barred any other payments designated as "child support." *Id.* at 693–94. The court determined that the stipulation could have been read either as a complete waiver of child support payments or as establishing an unmodifiable ceiling on the payor's support obligations. *Id.* at 694.

¶ 25. Under either interpretation, the court concluded that the parties' stipulation impermissibly precluded reconsideration of support obligations when one child's placement changed from primarily living with the father to primarily with the mother. *See id.* Therefore, the stipulation threatened to leave unaddressed the changing needs of the children. *Id.* at 696–97. Accordingly, *Ondrasek* has been cited for the rule that a child support stipulation that would prevent a payee

spouse from seeking an upward modification upon the occurrence of a substantial change in circumstances is per se invalid as interfering with the best interests of the child. *See id.; see also Wood v. Propeck,* 2007 WI App 24, ¶ 21, 299 Wis. 2d 470, 728 N.W.2d 757.

■

¶ 26. In addition to affirming the payee spouse's ability to seek modifications in the best interests of the child, we also acknowledge the principle that a payor spouse has a responsibility to act in the best interests of the child. Therefore, where a child support stipulation would hinder the payor spouse's ability to protect the best interests of the child, such stipulation will be invalidated on the same grounds as would a stipulation that hinders the payee's ability to protect the children. *See Krieman v. Goldberg,* 214 Wis. 2d 163, 177, 571 N.W.2d 425 (Ct. App. 1997).

¶ 27. In *Krieman,* the court of appeals concluded that a child support stipulation that imposed an unmodifiable floor on the payor spouse's payment obligations without any durational limit would not be upheld. *See id.* at 178. The child support stipulation in *Krieman* provided that "neither party shall under any circumstances have the right to petition the court for a modification of the child support provided for herein." *Id.* at 167. The court of appeals invalidated the stipulation, reasoning that the agreement's lack of a durational limit threatened to deprive the payor of the opportunity to seek modification upon a substantial change in circumstances, even when such change may have negatively affected the best interests of his children. *Id.* at 175–76.

■

¶ 28. A central component in determining whether an unmodifiable child support floor is enforce-

able is the duration of the provision, as the court of appeals has recognized. *See Wood,* 299 Wis. 2d 470, ¶ 20; *Krieman,* 214 Wis. 2d at 175–76; *Honore,* 149 Wis. 2d at 513–14. In *Honore,* for example, the court of appeals concluded that an approximately three-year unmodifiable floor did not violate public policy, even where the payor asserted a decrease in his income during that time. *Honore,* 149 Wis. 2d at 513–14. Conversely, in *Krieman,* the court concluded that a stipulation without any durational limit was unenforceable on public policy grounds. *Krieman,* 214 Wis. 2d at 165. Therefore, a child support obligation that is indefinitely unmodifiable will likely violate public policy. *See id.* at 175–78.

¶ 29.   However, a durational limit will not necessarily save a child support stipulation. In *Wood,* a stipulation that prohibited either party from seeking modification of child support obligations for seven years absent "catastrophic circumstances" was held to violate public policy. *See Wood,* 299 Wis. 2d 470, ¶ 1. The court of appeals determined that the stipulation would have prevented the payee mother from obtaining a modification even after the children's placement changed from shared to primarily with the mother. *See id.,* ¶ 11 (citing Wis. Stat. § 767.32(1)(a) (2003–04) (later renumbered to Wis. Stat. § 767.59(1f) by 2005 Wis. Act 443 §§ 148–59)). The court of appeals concluded that even though the parties' stipulation was intended to be fair to both spouses by imposing a bilateral limitation, the stipulation would have interfered with the court's ability to make orders in the best interests of the children. *Id.,* ¶¶ 14, 18.

¶ 30.   In *Frisch,* we concluded that a four-year moratorium on child support litigation violated public policy because such a limitation would have imposed an

upper limit on the payee's ability to secure support for the children. *See Frisch,* 304 Wis. 2d 1, ¶ 67. Such a ceiling would have deprived the payee of the ability to seek a modification even upon a showing of a substantial change in circumstances necessitating an increase to protect the best interests of the children. *Id.,* ¶ 74. In *Frisch,* we also stated that although the four-year unmodifiable ceiling violated public policy, no such prohibition existed for unmodifiable floors when they are limited in duration. *Id.,* ¶ 74 n.23. Specifically, we reasoned that "[s]tipulating to a minimum amount for a limited period of time does not violate public policy because it ensures that a certain amount of child support is received, which is in the best interests of the children." *Id.*

¶ 31. Soon after our decision in *Frisch,* the court of appeals decided *Jalovec v. Jalovec,* 2007 WI App 206, 305 Wis. 2d 467, 739 N.W.2d 834, which involved yet another four-year moratorium on child support litigation. In *Jalovec,* however, the challenge implicated what could be argued to be an unmodifiable floor on child support, because the payor father sought to decrease his payment obligations after taking primary placement of one of the children. *See id.,* ¶¶ 6, 19. Relying on our statement in *Frisch* that a four-year ceiling was contrary to public policy, the court of appeals held that the four-year moratorium on requesting a support reduction was also contrary to public policy. *Id.,* ¶ 19. It was this reasoning that prompted the court of appeals in the instant case to seek clarification of the question of when a limited duration, unmodifiable floor for child support violates public policy. *See May,* 2011 WL 51579, at *1, 4.

¶ 32. In addition to the relevant case law, we also examine the statutory bases upon which child support obligations are founded. Of importance to this case is

642

Wis. Stat. § 767.59(1f), which guides courts' decisions about whether to modify child support orders in two separate ways. On its face, § 767.59(1f) provides courts with examples of factual scenarios that may constitute "substantial changes in circumstances" that are sufficient to modify orders for child support. Some of those scenarios, listed in § 767.59(1f)(b), give rise to a rebuttable presumption that a substantial change has occurred. For example, "[c]ommencement of receipt of aid to families with dependent children" sets up a rebuttable presumption of a substantial change under § 767.59(1f)(b)1. Other circumstances, for example those listed in paragraph (c), relate possible instances in which a court *may* find that such a change has occurred. Therefore, these provisions signal to courts and litigants when modification to child support orders may be proper.

¶ 33. Moreover, Wis. Stat. § 767.59(1f) also provides some preliminary guidance to parties seeking to enter into agreements to govern child support. In particular, § 767.59(1f)(b)2. provides that after the passage of 33 months, a rebuttable presumption arises that a substantial change in circumstances has occurred that warrants a revision of the previous child support order, unless the order is expressed as a percentage of the payor's income. The legislature's inclusion of a period of time giving rise to a rebuttable presumption conveys that until the provided time period is reached, the passage of time, without more, may not support the conclusion that a substantial change in circumstances has occurred. Notably, this legislative policy comports with decisions of this court and the court of appeals examining durational limits in child support stipulations.

643

¶ 34. From the foregoing, we conclude that there exists a framework governing child support stipulations and orders. First, ceilings on child support payments are presumed to be invalid. *See Frisch,* 304 Wis. 2d 1, ¶ 74; *see also Ondrasek,* 158 Wis. 2d at 694–97. The foundation for this rule is long-established: the best interests of the child require that a payee spouse cannot be deprived of the ability to seek a modification in child support. *See Ondrasek,* 158 Wis. 2d at 694–97.

¶ 35. Second, an unmodifiable floor on child support payments that is not limited in duration, *e.g., Krieman,* 214 Wis. 2d at 178, or that has an excessively long duration, *e.g., Wood,* 299 Wis. 2d 470, ¶¶ 12–14, may violate public policy. Just as payees have a duty, and therefore must have the ability, to protect the best interests of the children, payors have a duty, and therefore also must have the ability, to protect the best interests of their children. Stated otherwise, an unmodifiable floor of excessive duration has the potential to impose undue hardship on the payor parent's ability to provide for the best interests of the children, thereby negatively affecting the children's relationships with that parent. *See Krieman,* 214 Wis. 2d at 177–78. However, we decline to adopt a rule that unmodifiable floors that are limited in duration are invalid per se. *See Frisch,* 304 Wis. 2d 1, ¶ 74 n.23. Agreements that provide an unmodifiable child support floor for a limited period of time often are created to lessen litigation between the parties. Repetitive litigation and the tension it creates are not in the best interests of children.

¶ 36. Third, where the parties to a child support order have entered into a stipulation in regard to child

support for a limited period of time that the court has adopted, courts will attempt to give effect to the parties' intentions where the stipulation was entered into freely and knowingly, was fair and equitable when entered into, and is not illegal or violative of public policy. *See id.,* ¶ 68. In this context, a court's review typically will consider the doctrine of equitable estoppel, by which a party may be precluded from challenging an agreement when the elements of estoppel set forth in *Rintelman* are satisfied. *See Rintelman,* 118 Wis. 2d at 596 (stating elements of estoppel as (1) both parties entered into the agreement freely and knowingly; (2) overall, the settlement is fair and equitable; and (3) the agreement is not illegal or violative of public policy). In the event that the elements of estoppel are met, courts have the equitable authority to decide whether to hold the parties to their bargain or to release them from it. *See Jalovec,* 305 Wis. 2d 467, ¶ 11.

■

¶ 37. Finally, courts retain the equitable power to consider circumstances in existence when the stipulation is challenged that were unforeseen by the parties when they entered into the stipulation if those circumstances adversely affect the best interests of the child. This is so because the protection of children and intervening in their best interests constitute long-standing grounds for exercising the equity jurisdiction of the courts. *See Dovi v. Dovi,* 245 Wis. 50, 57, 13 N.W.2d 585 (1944). Accordingly, if presented with the circumstances described above when a party seeks to enforce such an agreement and the other party seeks to modify the judgment that incorporates the agreement, courts retain the equitable authority and discretion to refuse to uphold all child support stipulations, even those that under principles of estoppel would otherwise be enforceable.

## C. Application

¶ 38. The circuit court concluded that the Mays' stipulation and the facts of this case required that Michael be held to his contractual and judicial child support obligations. The court determined that the elements of estoppel were met, and that there were no circumstances that would warrant relief from the parties' agreement. As discussed below, we reach the same conclusion.

¶ 39. Our review is two-fold: we first examine the facts as found by the circuit court to determine whether the elements of estoppel are satisfied as a matter of law; if we conclude that they are, we examine the circuit court's decision to apply estoppel to determine whether doing so was an erroneous exercise of discretion. We will affirm the circuit court if it examined the relevant facts, applied the proper legal standard and, using a demonstrated rational process, reached a reasonable conclusion. *See Miller v. Hanover Ins. Co.,* 2010 WI 75, ¶ 29, 326 Wis. 2d 640, 785 N.W.2d 493. Accordingly, we begin by examining the elements of estoppel in light of the facts of this case.

¶ 40. In the context of child support stipulations, the first element of estoppel asks whether Michael and Suzanne freely and knowingly entered into the support stipulation. *See Frisch,* 304 Wis. 2d at 1, ¶ 68. Judge Sumi conducted a careful examination to determine each party's understanding and acceptance of the terms of the December 2007 stipulation. Her examination demonstrates that the parties were assisted by skilled counsel; that the terms of the stipulation were clearly expressed; and that both parties were aware of and in agreement on those terms. We therefore agree with the

circuit court that both parties freely and knowingly entered into the support stipulation.

¶ 41. The second element of estoppel requires that the stipulation was fair and equitable. *Id.* At the outset, we note the apparent incongruity in Michael's stipulation to pay $1,200 per month when his monthly income from part-time employment at the time of the stipulation ranged between $1,600 and $1,800. We also note that when Michael became unemployed between the time of the stipulation and the time of his challenge to it in mid-2009, his income was practically the same as it had been at the time of the December 2007 stipulation.

¶ 42. At first blush, Michael's agreement to pay approximately 75 percent of his income seems high. Upon further examination, though, we are satisfied that the stipulation was both fair and equitable because it held Michael, who had previously earned $72,000 per year, to his obligation to support his children. The stipulation's provision that support could not be reduced for 33 months demonstrates that the parties were aware of historical fluctuations in Michael's income,[5] as well as his history of non-payment and non-compliance with prior orders. In addition, the stipulation and order

---

[5] The record shows that less than six months after entering the stipulation, and nearly one year before his challenge, Michael once again found employment in his field earning approximately $72,000 per year. The record also shows that Michael failed to report this substantial change in his income to Suzanne as required by the December 2007 stipulation. Although these facts could not retroactively support a finding that the stipulation was "fair," this behavior does, according to the record, demonstrate the continuation of a pattern of obstreperousness toward multiple child support orders during the years following the parties' divorce. From that pattern, there is ample support for the conclusion that the December 2007 stipulation was, overall, fair and equitable.

exhibit a quid pro quo: Michael was obligated to comply with the minimum payment schedule in exchange for modification of his then-existing child support obligations, including substantial arrearages. Therefore, we conclude that the parties' stipulation was fair and equitable.

¶ 43. The third element of estoppel is whether the agreement was illegal or contrary to public policy. *Id.,* ¶ 68. The parties' stipulation for child support was not illegal; such agreements are provided for by Wis. Stat. § 767.511(1) and Wis. Stat. § 767.59(2s). Rather, the crux of Michael's argument is that the stipulation violates public policy. As discussed in our examination of the case law, a stipulation that sets an unmodifiable floor for child support for a limited term does not necessarily run afoul of the public policy of protecting the best interests of the child. *Id.*

¶ 44. As an initial policy matter, we recognize that this stipulation does not implicate the prohibition on unmodifiable child support ceilings. *See id.,* ¶ 74. Instead, Michael asserts that the 33–month unmodifiable floor on his support payments suffers from the same infirmities as do ceilings. As suggested in our preceding discussion, we have located no support for the conclusion that the 33–month unmodifiable floor is a per se violation of the policy of protecting the best interests of the child.

¶ 45. Contrary to the purpose of a child support ceiling, a floor setting the minimum amount of child support payments does not threaten to deprive a payee parent of the ability to seek more support for his or her child. This is important because the payee is the parent that a court and the parties have determined to be more in need of financial support, as between the two parents, in order to provide for the best interests of the

child. *See, e.g.,* Wis. Stat. § 767.511, Wis. Admin. Code § DCF ch. 150 (prefatory note). Therefore, when a floor for child support payments is implemented and enforced, there is no fear that a payee parent will be hindered in his or her ability to protect the best interests of the child. The concerns discussed in cases such as *Wood,* 299 Wis. 2d 470, ¶ 18, or *Ondrasek,* 158 Wis. 2d at 696–97, are not relevant here, where Suzanne, as the payee, was free to seek an upward modification if the need presented itself.

¶ 46.   Next, we note that there exists some potential confusion regarding the permissible duration of an unmodifiable child support floor. Without rejecting *Honore*'s determination that a three-year stipulation was acceptable, we reaffirm our deference to the legislature's presumptive durational limit for changed circumstances, 33 months. *See* Wis. Stat. § 767.59(1f)(b)2. Beyond the legislature's rebuttable presumption of 33 months, case law suggests that stipulations lasting more than four years could be too lengthy. *See Frisch,* 304 Wis. 2d 1, ¶ 74. So, too, stipulations that are not related to a point in time that reasonably would support a reevaluation of the parties' support obligations and needs may not meet with the approval of the circuit court. *See Wood,* 299 Wis. 2d 470, ¶ 20. Section 767.59(1f)(b)2.'s rebuttable presumption that arises at 33 months represents what the legislature has determined is a reasonable time to reconsider support.

¶ 47.   From these principles, we conclude that the Mays' 33–month stipulation did not violate public policy. Where the parties entered into the stipulation freely and knowingly, where the overall agreement is fair and equitable, and where the stipulation is not violative of public policy, a court should be cautious when asked to allow one of the parties to disavow the agreement.

Although courts retain their equitable power to modify child support payments notwithstanding the parties' agreement to an "unmodifiable" floor, due to the absence in this case of unforeseen circumstances that negatively affect the best interests of the children, the agreement and order do not violate public policy.[6] Accordingly, we agree with the circuit court and conclude that the final element of estoppel is satisfied.

■■■■

¶ 48.  Our analysis turns, then, to whether the circuit court erroneously exercised its discretion when it held Michael estopped from challenging the stipulation within the 33–month period of its existence. *See King,* 224 Wis. 2d at 248. We conclude that the circuit court did not erroneously exercise its discretion:  the court examined the relevant facts, applied proper legal standards, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *Miller,* 326 Wis. 2d 640, ¶ 29. Therefore, we affirm the circuit court's decision to apply equitable estoppel to preclude Michael's challenge to the Mays' stipulation by modifying the order that incorporates it.

¶ 49.  As a final matter, we acknowledge Michael's argument that the passage of time and the development of more holistic notions of post-divorce family structure warrant overruling the court of appeals' decision in *Honore.* Michael argues that the shift in policy, as expressed in the relevant administrative code sections, *see, e.g.,* Wis. Admin. Code § DCF ch. 150, support his argument that the financial integrity of the payor parent has become a greater priority than ever before, and that that policy supports his attempt to reduce his

---

[6] Indeed, Michael has not pointed to *any* changed circumstances since the entry of the 2007 order.

payments. Although Michael seems to argue that the policies of the late-1980s are of a bygone era, we nonetheless continue to view the *Honore* court's analysis and conclusion as persuasive. In *Frisch,* we referred to *Honore* with approval, and therefore, even if times have changed since 1989 when *Honore* was decided, we do not accept the argument that such changes justify our rejection of the equitable principles enunciated in *Honore.*

## III. CONCLUSION

¶ 50.  We conclude that the Mays' stipulation and order for child support is enforceable. The parties freely and knowingly entered into the stipulation at issue and the terms of the stipulation were fair and equitable. Furthermore, the agreement is not contrary to public policy because the circuit court retains its equitable power to consider circumstances in existence when the stipulation was challenged that were unforeseen by the parties when they entered into the agreement if those circumstances adversely affect the best interests of the children. Michael has not demonstrated the existence of such circumstances. Accordingly, we affirm the decision of the circuit court.

*By the Court.*—The order of the circuit court is affirmed.

¶ 51.  ANN  WALSH  BRADLEY,  J.  *(concurring).* This case presents an important issue with far-reaching consequences. Wisconsin circuit courts have jurisdiction over thousands of divorces across the state. To ease contentious litigation and settle their expectations, parties to a divorce often enter into purportedly "unmodifiable" stipulations establishing a set level of child support.

¶ 52. The court of appeals certified this case to this court so that we could clarify whether stipulations establishing unmodifiable, limited-duration floors on child support are contrary to public policy. The responsibility of this court is to provide clear guidance on this important issue that affects courts and litigants on a daily basis. I do not join the majority out of concern that its purported answer to this question creates confusion rather than clarity.

I

¶ 53. I agree with many of the underpinnings of the majority opinion. The child's best interests are, and should be, the guidepost of a court's determination on whether to modify child support. Majority op., ¶ 19. Parties may stipulate to a limited-duration, unmodifiable child support floor, and such stipulations are not categorically contrary to public policy. *Id.,* ¶ 35. Such a stipulation can help a family going through a difficult divorce by curbing disagreements and litigation among the spouses. *See id.,* ¶¶ 35–36. Nevertheless, a court retains the discretion to modify a limited-duration unmodifiable floor on child support when the facts of an individual case warrant a modification. *Id.,* ¶¶ 15, 24.

¶ 54. As I see it, the court's discretion to modify an otherwise unmodifiable child support floor can be explained as follows: As a result of the party's stipulation to make child support unmodifiable for a limited duration, a party under a child support order may be estopped from later seeking its modification. However, even if all the elements of the equitable defense of estoppel are met, a circuit court may within its discretion decline to apply the doctrine of estoppel. *See id.,* ¶ 36 (citing *Jalovec v. Jalovec,* 2007 WI App 206, ¶ 11,

305 Wis. 2d 467, 739 N.W.2d 834). Circuit courts should be trusted to wisely exercise their discretion under the facts of a particular case.

¶ 55. This is precisely the analysis undertaken by the circuit court in this case. The court found that the elements of estoppel were met, and then it exercised its discretion, estopping Michael from seeking a modification. I agree with the majority that the circuit court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *Id.*, ¶ 48. Accordingly, there was no erroneous exercise of discretion.

## II

¶ 56. The majority's approach is not so straightforward. Rather, as explained by the dissent, the majority's analysis of this reoccurring situation leaves many unanswered questions in its wake.

¶ 57. First, the majority employs circular reasoning. It concludes that unmodifiable stipulations are not contrary to public policy because, when they are contrary to public policy, they can be modified. *See id.*, ¶ 3.

¶ 58. Second, the majority's discussion of when an unmodifiable stipulation should be modified is difficult to understand. The majority asserts that a circuit court may "consider circumstances in existence when the stipulation is challenged that were unforeseen by the parties when they entered into the stipulation if those circumstances adversely affect the best interests of the child." *Id.*, ¶ 37.

¶ 59. Although the majority's analysis appears to rest upon the above statement, it is difficult to evaluate that statement's import. It may be that the majority

means nothing more than what I have set forth above. That is, estoppel is an equitable defense, and even when all of the elements of estoppel are met, the circuit court must exercise its discretion in deciding whether to apply it.

¶ 60. However, the majority can also be interpreted as creating a new or different legal standard—unforeseen circumstances. According to the majority, a party must demonstrate unforeseen circumstances before a circuit court can exercise its authority to modify the parties' stipulation.[1]

¶ 61. Is this "new" standard really nothing more than the existing "substantial change in circumstances" standard under Wis. Stat. § 767.59(1f)? *See* dissent, ¶ 83. Does the majority intend to create a new standard? Whatever it is doing, it should be clearly stated in order to provide clear guidance to litigants and courts.

¶ 62. In addition to uncertainty about whether the majority has created a new standard, further questions remain. If the majority does intend to create a new standard, how does this new standard, "unforeseen circumstances," fit with the "substantial change in circumstances" standard for modifying orders in the absence of a stipulation? *See* Wis. Stat. § 767.59(1f). Is "unforeseen circumstances" a higher or lower hurdle than "substantial change in circumstances"? The majority does not say.

---

[1] If the majority has created a new standard, I fear that its effect will be to limit the circuit court's authority to safeguard the best interests of the child. If a party must establish unforeseen circumstances, then the majority has shifted the focus from the best interests of the child to whether the litigants actually foresaw the circumstances when they entered into the stipulation.

¶ 63. I agree that the circuit court did not erroneously exercise its discretion when it denied Michael's motion to modify child support on account of equitable estoppel. However, because I am concerned that the majority confuses rather than clarifies the law, I respectfully concur.

¶ 64. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). This case presents an oft-recurring situation. A clear answer is needed, one that can readily be applied in the numerous child support cases that present substantially the same issue. The majority opinion does not, in my opinion, fit the bill.

I

¶ 65. The issue presented is "whether ... a 33–month unmodifiable floor for child support payments is enforceable." Majority op., ¶ 1.[1] The majority answers in the affirmative, relying on the equitable power of circuit courts to modify unmodifiable child support orders (notwithstanding the parties' stipulation that it is "unmodifiable"), unforeseen circumstances that adversely affect the best interests of the child, the doctrine of equitable estoppel, case law discussing equitable estoppel, and the duration of an "unmodifiable" stipulation. Majority op., ¶ 3 & passim. Thus, according to the majority opinion, the parties cannot effectively stipulate to unmodifiable child support.

---

[1] The circuit court's 2008 judgment incorporated the parties' stipulation regarding child support. Both parties were represented by counsel. Neither party appealed the judgment. Neither party claims in the present proceeding that he or she did not understand the stipulation or that when the stipulation was adopted it was unfair to the parties or was not in the best interests of the child.

655

¶ 66. Stripping away the language in the majority opinion about the doctrine of equitable estoppel and the application of the doctrine, I read the essence of the majority opinion as holding that a stipulation imposing a floor on child support is enforceable against the payer (here Michael May) unless the payer shows that "unforeseen circumstances" exist at the time the payer seeks to modify child support and that "those circumstances adversely affect the best interests of the child."

¶ 67. I agree with the majority opinion that a circuit court has the power to modify a support order, regardless of whether the stipulation purports to be "unmodifiable." I do not join the majority opinion because there is a simpler, more straight-forward approach to this case.

¶ 68. Once the court acknowledges that the circuit court has the power to modify "unmodifiable" support orders, which it does in the present case, the court should not, in my opinion, create its own rules and standards to govern when this power may be exercised. Rather, Wis. Stat. § 767.59(1f), the statute governing modification of support orders, should take over. Wisconsin Stat. § 767.59(1f) demonstrates that the legislature has carefully attempted to shape circuit courts' and parties' power to modify child support. In its entirety, Wis. Stat. § 767.59(1f) provides:

SUPPORT: SUBSTANTIAL CHANGE IN CIRCUMSTANCES.

(a) Except as provided in par. (d), a revision under this section of a judgment or order as to the amount of child or family support may be made only upon a finding of a substantial change in circumstances.

(b) In an action under this section to revise a judgment or order with respect to the amount of child support,

any of the following constitutes a rebuttable presumption of a substantial change in circumstances sufficient to justify a revision of the judgment or order:

1. Commencement of receipt of aid to families with dependent children under s. 49.19 or participation in Wisconsin works under ss. 49.141 to 49.161 by either parent since the entry of the last child support order, including a revision of a child support order under this section.

2. Unless the amount of child support is expressed in the judgment or order as a percentage of parental income, the expiration of 33 months after the date of the entry of the last child support order, including a revision of a child support order under this section.

3. Failure of the payer to furnish a timely disclosure under s. 767.54.

4. A difference between the amount of child support ordered by the court to be paid by the payer and the amount that the payer would have been required to pay based on the percentage standard established by the department under s. 49.22(9) if the court did not use the percentage standard in determining the child support payments and did not provide the information required under s. 46.10(14)(d), 49.345(14)(d), 301.12(14)(d), or 767.511(1n), whichever is appropriate.

(c) In an action under this section to revise a judgment or order with respect to an amount of child support, any of the following may constitute a substantial change of circumstances sufficient to justify revision of the judgment or order:

1. Unless the amount of child support is expressed in the judgment or order as a percentage of parental income, a change in the payer's income, evidenced by information received under s. 49.22(2m) by the department or the county child support agency under s.

657

59.53(5) or by other information, from the payer's income determined by the court in its most recent judgment or order for child support, including a revision of a child support order under this section.

2. A change in the needs of the child.

3. A change in the payer's earning capacity.

4. Any other factor that the court determines is relevant.

(d) In an action under this section to revise a judgment or order with respect to child or family support, the court is not required to make a finding of a substantial change in circumstances to change to a fixed sum the manner in which the amount of child or family support is expressed in the judgment or order.

¶ 69.   In sum, my preferred holding in the present case is to apply Wis. Stat. § 767.59(1f) to govern the circuit court's power and the rights and responsibilities of payers and payees in modification of a child support order, regardless of whether the stipulation for support (upon which the circuit court's order is based) is purportedly "unmodifiable."

¶ 70.   My preferred holding would forthrightly accomplish what the majority opinion might be doing in what I consider a circular, hard-to-follow fashion.

¶ 71.   My preferred holding, just like the majority opinion, majority op., ¶¶ 3, 47, deprives parties of the ability to stipulate to a truly unmodifiable child support floor. This result is necessary because freedom of contract cannot take precedence over the best interests of the child.[2] While it is more frequently the case that

_____

[2] See Frisch v. Henrichs, 2007 WI 102, ¶ 75, 304 Wis. 2d 1, 736 N.W.2d 85.

raising the amount of child support would be in the child's best interests, situations could arise in which lowering the amount would be in the child's best interests because of fluctuations in the parents' income levels. *See* majority op., ¶ 35.

¶ 72. When an "unmodifiable" floor or a ceiling on child support is at issue, the judicial methodology, in my opinion, should be the same as when the child support stipulation is silent about whether it is modifiable: Apply Wis. Stat. § 767.59(1f) to determine whether the parties may obtain a modification of child support.

¶ 73. I recognize that "unmodifiable" stipulations are meant to avoid the frivolous, repeated motions that unfortunately sometimes are filed in the aftermath of a contentious divorce. But crucially, courts are not powerless to curb abusive litigation tactics. *See* majority op., ¶ 7 n.2. More importantly, the legislature has attempted to reduce motions to change child support by creating a high bar for modifying child support (*i.e.,* a substantial change in circumstances) precisely to put a brake on repetitive, unnecessary litigation. If this legislative brake is insufficient, the legislature should create a steeper burden on those seeking modification of child support and impose steeper consequences for frivolous or abusive attempts to modify child support. Until that time, I believe courts should apply Wis. Stat. § 767.59(1f).

II

¶ 74. Beyond my fundamental disagreement with the majority's approach, I do not join the majority because its reasoning presents numerous quandaries and glitches.

¶ 75. First, the majority's rule is circular. It in effect holds that unmodifiable floors on child support, for limited durations, are enforceable, but explains that they are enforceable because circuit courts may modify them. In other words, a stipulation adopting an unmodifiable floor on child support is enforceable because it is judicially modifiable!

¶ 76. This circularity allows the majority to confusingly and incorrectly apply equitable estoppel in the present case. Majority op., ¶¶ 3, 38–48. The first two elements of estoppel are not implicated by the present case. First, the parties freely and knowingly entered into the stipulation. Second, the terms were fair and equitable to the parties when made.

¶ 77. The confusion arises in the majority's treatment of the third element: Equitable estoppel is not available if the stipulation is contrary to public policy.

¶ 78. The majority holds that the stipulation in the present case is not contrary to public policy because a court may modify it. Majority op., ¶¶ 3, 47. Accordingly, as a matter of law, the payer in the present case is not equitably estopped from seeking a modification.

¶ 79. I understand why the majority opinion falls into the trap of trying to apply equitable estoppel in the present case. Prior cases have analyzed an unmodifiable floor on support in terms of the third element of equitable estoppel (public policy), and the parties' arguments in the present case discuss equitable estoppel and public policy.[3] Consequently, the majority opinion feels compelled to use this analysis.

¶ 80. The majority errs, however, because it fails to recognize that the third element of equitable estop-

---

[3] Michael May's brief addresses estoppel but takes a broader view of the case law. *See* majority op., ¶ 49.

pel no longer applies because the majority holds, as a matter of law, that the "unmodifiable" floor is judicially modifiable, and consequently the stipulation is not against public policy. Majority op., ¶¶ 3, 47. Thus, as a matter of law, the doctrine of equitable estoppel does not apply in the present case. The majority is oblivious to the fact that as a result of its opinion, the equitable estoppel analysis falls out of the picture.

¶ 81. Nevertheless, the majority moves to the second question applying the doctrine of equitable estoppel according to our prior case law. The question then becomes, may the payer (here Michael May) get a modification of the support stipulation inasmuch as he is not equitably estopped? In other words, may the circuit court exercise its discretion to modify child support regardless of equitable estoppel? That depends, according to the majority opinion, on whether the payer demonstrates that unforeseen circumstances exist that adversely affect the best interests of the child, which leads me to the next reservation I have about the majority opinion.

¶ 82. Second, the majority opinion unnecessarily introduces new, undefined criteria to cases involving modification of a stipulation on child support.

¶ 83. Are "unforeseen circumstances," majority op., ¶ 3, the same as a "substantial change in circumstances" under Wis. Stat. § 767.59(1f), which governs modification of support orders?[4]

---

[4] Noting that no statutory definition exists for what constitutes a substantial change in circumstances, the court of appeals has explained that "[o]ne shorthand definition for a substantial change in circumstances is that it is some unforeseen event which occurs after an agreement has been executed." *Jalovec v. Jalovec,* 2007 WI App 206, ¶ 24, 305 Wis. 2d 467, 739 N.W.2d 834.

¶ 84. Is "adversely affect the best interests of the child," majority op., ¶ 3, the same standard as "in the best interests of the child?"

¶ 85. I cannot tell whether the majority is creating a higher bar for a circuit court to modify child support when the parties' stipulation is "unmodifiable" than Wis. Stat. § 767.59(1f) provides when the stipulation does not include an "unmodifiable" provision. Since an "unmodifiable" stipulation and a stipulation that does not include an "unmodifiable" provision are, as a matter of law, both judicially modifiable, why shouldn't a court treat the two stipulations the same?

¶ 86. Third, the majority opinion's reliance on a circuit court's power to modify "unmodifiable" stipulations is a break from the analyses in past case law. Because the majority nevertheless relies on equitable estoppel and does not explain prior cases in terms of this change in the analysis, the majority creates confusion and incoherence in the case law.

¶ 87. In prior cases, the court has assumed that an "unmodifiable" stipulation is actually unmodifiable and analyzed the stipulation as such.

¶ 88. For example, in *Frisch v. Henrichs,* 2007 WI 102, ¶¶ 76–77, 304 Wis. 2d 1, 736 N.W.2d 85, this court held that any unmodifiable stipulation imposing a *ceiling* on child support violates public policy and is unenforceable. The *Frisch* court acknowledged that "[t]he ability to contract is fundamental to our legal system and may aid parties in settling their divorces more amicably," but recognized that in the child support context, "the child's best interests are paramount." *Frisch,* 304 Wis. 2d 1, ¶ 75. A truly unmodifiable ceiling would violate public policy because it would prevent a modification of child support even when there is a

substantial change in circumstances and modification would be in the child's best interests.

¶ 89. *Frisch* seems to have been wrongly decided in light of the majority's newfound reliance on the circuit court's equitable power to modify "unmodifiable" stipulations. Under the majority's reasoning, unmodifiable stipulations imposing a ceiling on child support should be enforceable because circuit courts have the discretion to modify them when necessary to protect the child's best interests. Despite the incoherence injected into the *Frisch* holding by the majority's holding in the present case, the majority opinion, ¶¶ 31, 45–46, claims it reaffirms *Frisch* (although it adds a new twist that is not present in the *Frisch* opinion).[5]

¶ 90. Similar incoherence arises in the majority's treatment of *Krieman v. Goldberg,* 214 Wis. 2d 163, 571 N.W.2d 425 (Ct. App. 1997). In *Krieman,* the court of appeals held that an unmodifiable floor on child support that was unlimited in duration violates public policy and is unenforceable. The *Krieman* court stated that "an *unreviewable* stipulation for child support could jeopardize a payer parent's financial future . . . ." *Id.* at 178 (emphasis added). Such a stipulation "may have detrimental effects on the parent/child relationship and in this way would ultimately not serve the best interests of the child." *Id.*

---

[5] The majority opinion at ¶ 34 reads *Frisch* as holding that ceilings on child support payments are "presumed" to be invalid, citing ¶ 74 of *Frisch* and *Ondrasek v. Tenneson,* 158 Wis. 2d 690, 694–96, 462 N.W.2d 915 (Ct. App. 1990). Neither *Frisch* nor *Ondrasek* refers to a presumption. Both cases held that the unmodifiable agreements placing a ceiling on child support were per se unenforceable as contrary to the public policy of protecting the best interest of the child.

¶ 91. As *Krieman* demonstrates, under prior case law, the duration of the unmodifiable stipulation was of great importance. But duration was significant because it was understood that "unmodifiable" in the stipulation meant unmodifiable. Duration was a proxy for determining whether the stipulation was in the best interests of the child or against public policy (that is, not in the best interests of the child). The longer the duration of the stipulation, the more likely the stipulation would prevent a modification of child support despite a substantial change in circumstances that rendered the current support not in the best interests of the child.

¶ 92. Under the majority's reasoning, duration should be irrelevant. Yet the majority treats duration as potentially dispositive. Majority op., ¶¶ 36, 44, 47. According to the majority opinion (which admits to being influenced by Wis. Stat. § 767.59(1f)), a 33–month stipulation is acceptable but a stipulation lasting more than four years may be too lengthy. Majority op., ¶ 46. If circuit courts have the power to modify unmodifiable stipulations imposing a floor on child support, why does the duration of the stipulation matter? Under the logic of the majority opinion, an unmodifiable stipulation of unlimited duration imposing a floor on child support is not per se contrary to public policy because the circuit court has the power to modify it at any time for unforeseen circumstances that adversely affect the best interests of the child.

¶ 93. *Frisch* and *Krieman* are not the only cases that no longer make sense in light of the majority opinion. A dramatic additional example is *Honore v. Honore,* 149 Wis. 2d 512, 439 N.W.2d 827 (Ct. App. 1989), in which the court of appeals held that an unmodifiable floor lasting approximately three years was enforceable and not contrary to public policy,

*despite the fact that the stipulation prevented modification of child support even on "a showing of cause."* Honore, 149 Wis. 2d at 516.

¶ 94. The present case features a nearly identical fact pattern as *Honore.* The child support floor is unmodifiable here for 33 months, compared to approximately 36 months in *Honore.* The majority claims that it is not rejecting "*Honore*'s determination that a three-year stipulation was acceptable," majority op., ¶ 46, but in fact, the majority overrules *Honore sub silentio.*

¶ 95. The *Honore* court explicitly held that the stipulation could *not* be modified *even on a showing of cause;* the floor on child support in *Honore* was truly unmodifiable for three years and was nevertheless declared enforceable. Under the majority's reasoning in the present case, *Honore* is no longer good law. According to the majority opinion, the *Honore* stipulation could be judicially modified for cause within the three-year period, that is, the stipulation would be judicially modified if the payer or payee demonstrated at any time unforeseen circumstances that adversely affected the best interests of the child. The majority does not come to terms with this reality or the incoherence in the case law.

¶ 96. The court of appeals certified the instant case to this court to clarify what the court of appeals saw as confusion in the case law. The certification memorandum asks whether a recent court of appeals decision, *Jalovec v. Jalovec,* 2007 WI App 206, 305 Wis. 2d 467, 739 N.W.2d 834, which held that a four-year unmodifiable floor on child support was against public policy, was inconsistent with the following footnote in *Frisch,* 304 Wis. 2d 1, ¶ 74 n.23: "Stipulating to a minimum amount for a limited period of time does not violate public policy because it ensures that a

certain amount of child support is received, which is in the best interests of the children."

¶ 97. The certification also asked this court to explain whether it mattered for purposes of public policy if the duration of an unmodifiable floor on child support was "tied to" a future time when it would be logical to reexamine support.

¶ 98. How does the majority opinion clarify the meaning and continued validity of the *Frisch* footnote and the continued validity of *Jalovec* and other case law developed by the court of appeals? It doesn't.

¶ 99. The majority does not answer the court of appeals' question about a stipulation's duration being "tied to" a logical point in the future. It merely states that stipulations not related to a reasonable future reevaluation point "may not meet with the approval of the circuit court." Majority op., ¶ 47. Under the standard actually adopted by the majority, why does the duration of the stipulation matter, irrespective of whether it is "tied to" a logical point in the future? A court may modify the terms of the stipulation if needed for the best interests of the child.

¶ 100. The majority has created a new approach to unmodifiable stipulations imposing a floor on child support. It focuses on the circuit court's equitable power to modify "unmodifiable" stipulations under certain circumstances and has jammed this approach onto past case law without explaining the dramatic shift in the court's analytical framework. Rather than acknowledging that its methodology clashes with prior case law involving "unmodifiable" floors on child support, the majority tries to save prior cases in some form and muddies the waters even further.

¶ 101.    Despite these concerns, I believe that circuit courts will wisely apply the majority's opinion in the same way that they apply Wis. Stat. § 767.59(1f) to payers and payees seeking to modify child support orders (that do not include any "unmodifiable" provision). The majority's analysis relying on equitable estoppel and unforeseen circumstances that adversely affect the best interests of the child will morph into the statutory standards of "substantial change in circumstances" and "the best interests of the child."

¶ 102.    Nevertheless, I dissent rather than concur because the majority errs in its bottom line in the present case.

¶ 103.    The majority claims that the circuit court applied the majority opinion's analysis when the circuit court applied equitable estoppel and denied the payer's attempt to modify the stipulation. Majority op., ¶ 48. Yet the circuit court did not know about the majority opinion's newly minted equitable power of the circuit court and therefore could not have applied it and did not apply it.

¶ 104.    The circuit court heard legal argument by counsel for both parties about whether the stipulation violated "public policy" (which was not defined) and, relatedly, whether equitable estoppel could apply. Neither counsel nor the circuit court addressed the significance of any "unforeseen circumstances" that might "adversely affect the best interests of the child." Although the circuit court heard counsel briefly summarize background facts that led the payer to seek modification, the circuit court did not hold a hearing to figure out whether there were unforeseen circumstances that adversely affect the best interests of the

child. The circuit court focused entirely on the question whether a 33–month unmodifiable child support floor was void as a matter of law as contrary to public policy, the third element of equitable estoppel.

¶ 105.   The circuit court carefully applied the then-existing equitable estoppel framework. It concluded that the 33–month unmodifiable floor was not void as a matter of law, which satisfied the third legal element of equitable estoppel. Therefore, the payer could be equitably estopped from seeking modification of the "unmodifiable" stipulation.

¶ 106.   The circuit court then announced, properly, that it was exercising its discretion whether to apply equitable estoppel in the present case and decided to apply equitable estoppel, but did not explain why it decided to do so, beyond the fact that the legal elements of equitable estoppel were satisfied. The circuit court stated:   "So all the requirements for the application of estoppel have been met. I exercise my discretion, which is the final step under [*Jalovec*], I exercise my discretion to apply the doctrine of estoppel . . . ."

¶ 107.   As this court often notes, a discretionary decision must be founded upon proper legal standards.[6] In the present case, the circuit court simply concluded that estopping the payer spouse did not violate public policy "where the children's best interest demand that they continue to receive a certain amount of child support or at least a minimum level." This language is reminiscent of *Frisch,* in which the court explained in a footnote that unmodifiable floors do not violate public policy because they "ensure[] that a certain amount of

[6] *See, e.g., McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971).

child support is received."[7] But the circuit court's discretionary decision was not based on the legal standard the majority creates today. The circuit court made no findings about unforeseen circumstances that might adversely affect the best interests of the child and this court cannot make any such findings on the basis of the record before it.

¶ 108. The majority opinion is correct that the payer has not demonstrated the existence of such circumstances, majority op., ¶ 3, but it fails to acknowledge or realize that the payer was never given the opportunity to make any such demonstration because it was not the focus of the hearing. Thus, under the reasoning of the majority opinion, the matter must be remanded to the circuit court to give the payer an opportunity to demonstrate "unforeseen circumstances" that "adversely affect the best interests of the child."

¶ 109. For the reasons set forth, I dissent.

---

[7] *Frisch,* 304 Wis. 2d 1, ¶ 74 n.23.